## DUPUY v. DELAWARE INS. CO. OF PHILADELPHIA.

(Circuit Court, W. D. Virginia. September 21, 1894.)

1. AUCTION—SALE OF CORPORATION'S REAL ESTATE—MANAGER AS AUCTIONEER.
   The fact that the auctioneer who sells real estate of a corporation at public auction is a stockholder, director, secretary, treasurer, and a general manager of such corporation, does not affect the validity of the sale. Kearney v. Taylor, 15 How. 494, distinguished.

2. SAME—PRIOR AGREEMENT BETWEEN AUCTIONEER AND PURCHASER—EFFECT.
   Where the conditions of such sale are that the land shall be paid for with stock in such corporation at 80 cents of the par value, an agreement by the auctioneer, made before the sale, to let the purchaser have sufficient stock to make such payment, does not affect the validity of the sale.

3. SALE OF REAL ESTATE—STATUTE OF FRAUDS.
   Code Va. § 2840, which provides that no action shall be brought on a contract for the sale of real estate unless the contract, or some memorandum or note thereof, is in writing, and signed by the party to be charged thereby, or his agent, renders a parol contract for the sale of real estate voidable only, and not void.

4. FIRE INSURANCE—INSURABLE INTEREST.
   A purchaser in possession of real estate under a parol contract of sale has an insurable interest therein, though the contract provides that the vendee shall complete a building thereon within six months, and the title shall not pass until such building is completed, and the building burns before it is completed; the purchase price being paid and deed executed after the loss occurs, and the loss occurring before the expiration of the six months.

**5. SAME—CONDITIONS—FALSE STATEMENT OF ASSURED'S INTEREST.**

Where a fire insurance agent has full knowledge of assured's interest in property at the time he issues a policy on it which misstates assured's interest, and he issues the policy on his own knowledge, without any statement or representation by the assured, the policy is not rendered void by a condition that it shall be void if such interest be not truly stated.

**6. SAME—VACANCY OF PROPERTY—NEGLIGENCE OF AGENT.**

In an action on a policy issued on a building not yet completed or fit for occupancy, it appeared that a vacancy permit for 30 days was indorsed on the policy, and defendant's agent promised assured that he would indorse such a permit on the policy every 30 days until the work of completing the building should be commenced, or until assured was otherwise notified; that after indorsing such permit twice the agent failed to again indorse it at the proper time, by inadvertence; and that the property burned more than 10 days after the permit expired. *Held,* that the condition in the policy declaring it void if the building remained vacant for 10 days was waived.

**7. SAME—CONDITIONS IN POLICY—MANNER OF PRINTING—STATUTORY REQUIREMENTS.**

Code Va. § 3252, provides that a failure to perform any condition of an insurance policy issued after the statute takes effect shall not be a valid defense to an action on such policy, unless such condition is printed in type as large or larger than that known as "long primer," or is written with pen and ink in or on the policy. *Held,* that such statute is not in conflict with any provision of the constitution of the United States or of the state of Virginia, and is valid.

This was an action in assumpsit by J. A. Dupuy against the Delaware Insurance Company of Philadelphia on a fire insurance policy.

Scott & Staples, for plaintiff.
Peatross & Harris, for defendant.

PAUL, District Judge. This action was originally brought in the circuit court of the state of Virginia for the county of Franklin, and removed into this court upon the petition of the defendant company; the plaintiff being a citizen and resident of the state of Virginia, and the defendant a corporation under the laws of the state of Pennsylvania, and having its principal office in that state. It is an action of assumpsit brought by the plaintiff upon a policy of insurance issued by the defendant on a dwelling house of the plaintiff situate in the city of Roanoke, Va. Its object is to recover damages for a loss caused by the destruction of the said dwelling house by a fire which occurred on the 14th day of October, 1892. By a stipulation between the parties, in writing, it is agreed that the issues of fact involved in this cause may be tried and determined without the intervention of a jury, a jury being expressly waived, and that the finding of the court upon the facts, whether general or special, shall have the same effect in this cause as the verdict of a jury.

The evidence, which is voluminous, discloses the case as follows: On the 1st day of July, 1892, the plaintiff purchased the house and lot involved in this action from the Janette Land Company, a corporation doing business in the city of Roanoke, Va. Several months prior to that date the stockholders of the said company, in general annual meeting, had passed a resolution directing the general managers of the company to offer for sale to the stockholders two houses

in process of erection, with the lots on which they are situated, and to receive in payment for the same the stock of the company at 80 per cent. of its par value; the purchaser to obligate himself to complete said building or building within six months from the date of the sale according to the plans and specifications on file with the general managers of the company, the company to retain title to the property until this condition had been complied with. In accordance with this resolution the general managers of the company fixed upon July 1, 1892, as the time, and the city of Roanoke as the place, for the sale of the two houses and lots mentioned in said resolution, and gave notice thereof to the stockholders by circulars addressed and mailed to each of them; and at this sale the plaintiff, being a stockholder in the said company, became the purchaser of one of the houses and lots mentioned in said resolution, and it is the same that is involved in this action. The price bid and agreed to be paid by the plaintiff for the property was $6,000, which was equivalent to $7,500 in the stock of the company. At the date of the sale there had been no scrip issued to the stockholders for the stock held by them, but the plaintiff had subscribed for, and paid the required assessments on, 37 shares, and had purchased from another stockholder 2 more shares, and was in fact the owner of 39 shares of the stock of the company, the par value of which was $3,900. In order to make up the whole of the amount which he bid and agreed to pay in the stock of the company for the property, the plaintiff purchased of Taliaferro 4 shares, and of W. P. Dupuy, plaintiff's brother, enough more to make up the total of $7,500, the amount in the stock of the company which the plaintiff bid and agreed to pay for the property. There was no writing made or signed by the plaintiff as purchaser, and no memorandum of the sale in writing at the time the sale was made. The sale was made by way of auction, and took place on the porch of the house sold. At the date of the sale the house was insured by the defendant in a policy issued by it in favor of the Janette Land Company, but, this policy having but a day or two to run, the agent of the defendant, W. P. Dupuy, immediately after the sale, and before the plaintiff had left the premises of the house where the sale took place, solicited from the plaintiff permission to insure the house as his (the plaintiff's) property, and the plaintiff agreed that the same should be done. And thereupon, on the same day, the policy formerly issued by the defendant to the Janette Land Company on the house was canceled, and a new policy issued on the said house to the plaintiff, and for a larger amount than the former policy covered. No written application was made or signed by the plaintiff for this policy, and he made no representation to the defendant as to his title to the property, or his interest in it. W. P. Dupuy, of the firm of Dupuy & Taliaferro, who were the agents of the defendant, was the auctioneer who sold the house and lot to the plaintiff. He was also a stockholder in the Janette Land Company, a director in said company, and its secretary and treasurer. He was also a member of the firm of Dupuy & Taliaferro, who were the general managers of the said company. He was fully acquainted

with the condition of the property, with respect to the title and interest of parties in it, and especially with the title and interest of the Janette Land Company prior to and at the time of the sale, and with the interest of the plaintiff in the property at the time he insured it. The policy was placed, together with other papers belonging to the plaintiff, in a compartment used by him in the safe of Dupuy & Taliaferro, the agents of the defendant. It was never seen by the plaintiff until a short time before the fire occurred, when he examined it to ascertain the amount of the insurance, and the character of the roof, as described in the policy, which he did with a view of giving some information to a party with whom he was endeavoring to negotiate a sale of the property. When this policy was issued to the plaintiff, there was attached to it what is called a "builder's permit" for the period of 30 days. A few days before this builder's permit expired by limitation, the defendant, by its same agents, issued to the plaintiff on this policy what is called a "vacancy permit" for the period of 30 days, and agreed to renew the same every 30 days until work on the uncompleted house should be resumed, or until the plaintiff should be notified otherwise. This vacancy permit was first indorsed on the policy on the 1st day of August by W. S. Ficklen, a clerk in the office of Dupuy & Taliaferro, the agents of the defendant, and on the 1st day of September it was renewed for the period of 30 days. But, in the latter part of September, Ficklen left the employment and office of Dupuy & Taliferro, the agents of the defendant, and by inadvertence the renewal for another 30 days was not indorsed on the policy on the 1st of October. No notice was given to the plaintiff or to the defendant by Ficklen that such indorsement had not been made. The plaintiff and the defendant's agents both supposed that it had been made until after the fire occurred. It is further shown that on the day he purchased the property, and before leaving the premises after making the purchase, the plaintiff consulted H. H. Huggins, the architect and superintendent of the house, in regard to completing the building, and that he, some time after he had made the purchase, applied for and obtained the keys of the house, and accompanied a prospective purchaser to and through the house, exhibiting the same to him, with a view of inducing him to purchase it. It is further shown that the sale of the house and lot to the plaintiff was reported to the stockholders of the Janette Land Company at their next general annual meeting by the general agents of the company, Dupuy & Taliaferro, and that the sale was ratified by the stockholders, and a deed executed, conveying the property to the plaintiff.

The action is defended on the following grounds: First. That J. A. Dupuy, the plaintiff, had no insurable interest in the property when the policy was issued, and none when the property was burned; that the policy was therefore a wagering policy, and void. Second. That the interest of the plaintiff in the property was not truly stated, and the character of the property not truly described, when the insurance was obtained, and that there was a breach of warranty in this failure, and hence the policy was avoid-

ed. Third. That the house was insured only while occupied as a dwelling; that permission was only given, if at all, for it to remain vacant until 1st of October, 1892; that it was burned after that date, and while vacant; and that, therefore, the policy was void. It was further contended in the argument of counsel for the defendant that whereas W. P. Dupuy, the auctioneer who made the sale, was a stockholder in the vendor company, and hence part owner of the property sold; that he was also a general manager, director, secretary, and treasurer of the said company,—therefore the sale of the property made by him, and his memorandum of such sale, were void. It is not necessary to discuss this question, so far as it relates to any memorandum of the sale made by the auctioneer, for it is conceded by counsel for the plaintiff that no memorandum in writing was made of the sale by the auctioneer at the time of the sale, or afterwards, so as to bring the sale within the requirements of the statute of frauds. The question as to the validity of a memorandum in writing made by the auctioneer is therefore eliminated from this case.

As to the other contention of the defendant, to wit, that the sale was void because the auctioneer was a stockholder, director, secretary, and treasurer, and a general manager, of the company whose property he was selling, the court is of opinion that such a position is untenable. There is no principle of law which inhibits a man who is interested in any property, either as sole or part owner, from selling the same, either privately or at public auction. Counsel for the defendant have cited no authority for the position taken, nor does the court think any can be adduced. The evidence clearly shows that the auctioneer had no interest in the purchase of the property. All the authorities quoted by counsel for the defendant are to the effect that the auctioneer cannot be a purchaser of, or interested in the purchase of, the property which he is selling. This is the doctrine laid down in Kearney v. Taylor, 15 How. 494, which is a leading case relied on by counsel for the defendant. In that case it was sought to set aside a sale as void on the ground that the auctioneer who sold the property was a member of or interested in a company that became the purchaser. The failure of the case cited to apply to the case at bar is seen in its statement. Counsel for the defendant, in their brief, do not apply the doctrine to an auctioneer who is interested in a purchasing company, but to one who is interested in the company which is selling the property.

Equally untenable, in the opinion of the court, is the position taken by the defendant, that W. P. Dupuy was disqualified to act as auctioneer to sell the property because of the agreement made between him and the plaintiff, prior to the sale, that in the event the plaintiff should become purchaser of the property the auctioneer would let him have enough of his stock in the selling company to make up the requisite amount of such stock to pay for the property. This agreement was no more than any auctioneer might make with a prospective purchaser,—that, if such prospective purchaser had not money enough in hand to make up the purchase price, he (the

auctioneer) would lend him enough for the purpose. An agreement of this kind would by no means give the auctioneer an interest in the purchase, but would simply establish between him and the purchaser the relation of creditor and debtor. It seems unnecessary to discuss this question further.

The principal question in this case is whether the plaintiff had an insurable interest in the property which was insured. The defendant contends that because there was no contract in writing, signed by the purchaser or his authorized agent, the sale of the house and lot to the plaintiff was absolutely void, and cites in support of this contention the Virginia statute, as follows, from the Code of Virginia:

"Sec. 2840. No action shall be brought * * * upon any contract for the sale of real estate * * * unless the contract * * * or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent. * * *"

A void contract is defined as follows:

"An act is void which, when done, was bad or against the law in respect to the whole community, and nobody is bound by it. But it is voidable if only bad as to a particular person, who may or may not avoid it. When void it may be so treated by any person, and without a special plea or motion, but when voidable it is generally otherwise, if it has been executed." 8 Myer, Fed. Dec. § 874.

The court is of opinion that the contract in this case was not void, but only voidable at the option of one of the parties to it; that it remained in full force until one of the parties should take some action or proceeding by which it would be avoided. The language of the statute relied on by the defendant is not that a contract for the sale of real estate shall be void unless made in writing, but that no action shall be brought thereon. The language is similar to that which is used in the Code of Virginia for the limitation of personal actions generally. See Code Va. § 2920. It is well settled that the statute of limitations does not affect the validity of contracts, but only the remedy for their enforcement. By analogy the validity of the contract here is not affected by the failure to reduce it to writing, but only the remedy is affected, and the defense to the binding effect of the contract can be made by no one except one of the parties to it. The current of authorities fully sustains the court in this position:

"Where the terms of the statute are not complied with, no action can be brought to charge a contracting party by reason of the contract, but the statute does not make the contract void." 3 Minor, Inst. p. 156.

"The plea of the statute of frauds is a personal privilege, which the party may waive, and no other can plead for him, or compel him to plead it, as, if he chooses to do so, the party may voluntarily perform the contract." Wood, St. Frauds, p. 877.

"As to what amounts to an insurable interest, there has been much discussion in the courts, without hitherto arriving at any satisfactory definition. It may be said generally, however, that while the earlier cases show a disposition to restrict it to a clear, substantial, vested, pecuniary interest, and to deny its applicability to a mere expectancy without any vested right, the tendency of modern decisions is to relax the stringency of the earlier cases, and to admit to the protection of the contract whatever act, event, or property bears such a relation to the person seeking insurance that it can be said with a reasonable degree of probability to have a bearing upon his prospec-

tive pecuniary condition. An insurable interest is sui generis, and peculiar in its texture and operation. It sometimes exists where there is not any present property,—any jus in re or jus ad rem. Yet such a connection must be established between the subject-matter insured and the party in whose behalf the insurance has been effected as may be sufficient for the purpose of deducing the existence of a loss to him from the occurrence of an injury to it." 2 May, Ins. § 76. "But insurable interest does not at all depend upon the completeness or validity of the title by which the insured property is held. Thus possession under a contract of sale, upon which partial payment has been made, may give an insurable interest, although the conditions of the contract have been so far violated that if the breach be insisted on the contract cannot be enforced, since the contract, notwithstanding the breach of its conditions, may be carried into effect by the parties in interest. And this is true though the vendor, availing himself of the violations of the conditions by the vendee, has resold the property, and is resisting a proceeding in equity brought by the vendee to compel a conveyance. If this were not so, the property might be destroyed pending the litigation, to the prejudice of the vendee, should he ultimately prevail." Id. § 87.

"The fact that the assured does not hold the absolute title to the property insured does not necessarily prevent him from recovering the full value of the property insured. Thus, a person who has gone into possession of the premises under a contract to purchase, but who has not paid all the purchase money, nevertheless has an insurable interest, to the extent of the full value, and may recover the same upon the policy." 2 Wood, Ins. § 483.

"The contract being one of indemnity, it follows, as a matter of course, that the person insured must have an interest in the property, and be so situated with reference to it that an injury thereto, or its destruction, would result in a pecuniary loss to him. An immediate pecuniary loss need not exist. It is sufficient if there is a reasonable expectation that the insured will derive a pecuniary advantage therefrom." 1 Wood, Ins. § 263. "It is not necessary that the assured should have either a legal or equitable interest, or indeed any property interest, in the subject-matter insured. It is enough if he holds such a relation to the property that its destruction by the peril insured against involves pecuniary loss to him, or those for whom he acts. It need not be an existing jus in re nor jus ad rem." Id. p. 645.

"But the oral contract to purchase was not void or illegal by reason of the statute of frauds. Indeed, the statute presupposes an existing lawful contract. It affects the remedy only as between the parties, and not the validity of the contract itself; and when the contract has actually been performed, even as between the parties themselves, it stands unaffected by the statute. It is therefore to be treated as a valid, subsisting contract, when it comes in question between other parties for purposes other than a recovery upon it." Amsinck v. Insurance Co., 129 Mass. 185.

"The policy contained a warranty on the part of the assured that he was the sole and unconditional owner of the property covered by the policy, and provided that any breach of the warranties therein contained should render the policy void. The plaintiff was not the unconditional owner of the real estate, but held therefor only a contract for a deed. The contract of insurance was made on the part of defendant by its recording agents at Algona, Hoxie & Reaver, and they issued the policy. When the contract was made, plaintiff fully informed Mr. Hoxie, one of the agents, of the character of his title; and it was fully understood by the agents, and their daily report to the defendant showed the facts in regard to it. Yet, with knowledge of such facts, the agents issued the policy in its present form, and the defendant accepted the premium, and permitted the policy to stand. The failure of the policy to state correctly the title of the plaintiff was due wholly to the fault of the defendant, and it will not be permitted to escape liability on account of it." McMurray v. Insurance Co. (Iowa) 54 N. W. 354.

"A right of property in the thing is not always indispensable to an insurable interest. Injury from its loss or benefit from its preservation, to accrue to the assured, may be sufficient, and a contingent interest thus arising may be made the subject of a policy." Hooper v. Robinson, 98 U. S. 528.

"That an equitable interest may be insured is admitted. We can perceive no reason which excludes an interest held under an executory contract. While

the contract subsists the person claiming under it has undoubtedly a substantial interest in the property. If it be destroyed, the loss, in contemplation of law, is his. If the purchase money be paid, it is his in fact. If he owes the purchase money, the property is its equivalent, and is still valuable to him. The embarrassment of his affairs may be such that his debts may absorb all his property, but this circumstance has never been considered as proving a want of interest in it. The destruction of the property is a real loss to the person in possession, who claims title under an executory contract, and the contingency that his title may be defeated by subsequent events does not prevent this loss. We perceive no reason why he should not be permitted to insure against it." Insurance Co. v. Lawrence, 2 Pet. 48; Marshall, C. J., delivering the opinion of the court.

But in this case the question of insurable interest seems to be put at rest by the possession of the property by the plaintiff from the day of its purchase by him to the time of its destruction by fire. He, and he alone, exercised acts of ownership over it, and the property was susceptible of no other possession than that which he did exercise over it. The facts, as stated, show this. In addition to this it may be noted that the contract has been fully carried out by both parties to it. The consideration for the property has passed from the purchaser to the seller, and the latter has executed a deed conveying the property to the plaintiff. The plaintiff directed the cancellation of the stock which he held in the land company from which he made the purchase, thus surrendering to the seller its obligation, the surrender and cancellation of which was the consideration for which the land company had offered and agreed to convey the property to the purchaser; such purchaser being a holder of its stock, and obligating himself to complete the building within six months from the date of the purchase. It is true that the last-named condition was not complied with, but it had not been violated at the time the fire occurred. It could not be complied with because of the burning of the house, and was released because it was not possible to comply with it.

In the second place, as to whether the policy was void because the plaintiff's interest in the property was not truly stated, and the character of the property not truly described, when the insurance was obtained. The provision of the policy under which this defense is made is as follows:

"This policy shall be void * * * if the interest of the insured in the property be not truly stated therein, * * * or if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple."

The evidence shows that Dupuy & Taliaferro were the agents of the defendant, and that W. P. Dupuy, a member of that firm, solicited from the plaintiff the insurance of the property for the defendant, and issued the policy on behalf of the defendant; that said W. P. Dupuy was the auctioneer who sold the property to the plaintiff; that he was a stockholder in the land company, the owner of the property; that he was a director, secretary, and treasurer of the company; and that the firm of Dupuy & Taliferro, of which he was a member, were the general agents of the said company. He was fully acquainted with the condition of the property, with respect to the title and interest of all parties, and

especially the land company, prior to and at the time of the sale, and with the interest of the plaintiff in the property at the time he insured it. This brings home to the defendant full knowledge of all the facts in connection with the ownership of the property at the time it issued its policy of insurance upon it to the plaintiff. Besides, it appears from the evidence that the plaintiff made no representation whatever, either in writing or otherwise, as to his interest in the property, but that the agent of the defendant, when soliciting the insurance of the plaintiff, relied upon his own full knowledge of all the facts and circumstances relating to the title and ownership of the property, and issued the policy of insurance to the plaintiff upon his (the agent's) own knowledge of the interest which the plaintiff had in the property at that time, the agent's knowledge being as full and particular as that of the plaintiff. Sun Mut. Ins. Co. v. Ocean Ins. Co., 107 U. S. 485, 1 Sup. Ct. 582.

"To deliver a policy with full knowledge of facts upon which its validity may be undisputed, and then to insist upon these facts as ground of avoidance, is to attempt a fraud. This the courts will neither aid nor presume; and when the alternative is to find this, or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter. * * * Such an issue is tantamount to an assertion that the policy is valid at the time of the delivery, and is a waiver of the known ground of invalidity. So is the issue of a policy upon an application to a question in which no answer is given." May, Ins. § 497.

"It is well settled by the weight of authority that where a policy is issued containing conditions inconsistent with the facts, and the agent knew the facts when the policy was issued, the conditions are waived, so far as they conflict with the facts known to the agent; and this is peculiarly the case when the agent fills up the application erroneously when the facts were correctly stated to him by the assured. In such cases the doctrine of estoppel is a very just application, as, if it was not permitted to apply, an innocent party could be made to suffer." 2 Wood, Ins. § 90.

The doctrine of the liability of insurance companies for the acts of their agents is so well established that the court deems it unnecessary to discuss the question, or to cite authorities to sustain it. The court finds nothing in the facts of this case to distinguish it from the reported cases sustaining this firmly-settled principle.

There was a provision in the policy making it void if the building "be or become vacant or unoccupied, and so remain for ten days," unless otherwise provided by agreement indorsed on the policy, or added to it. It is claimed by the defendant that under this provision the policy is void, because the building was vacant, and so remained for .10 days and longer, without permission of the insurance company indorsed on the policy, or added to it. The evidence shows that at the time the building was insured it had not been completed, and was not fit for occupancy. Because of this fact, there was indorsed on the policy when it was originally issued a builder's permit for the period of 30 days. When this builder's permit was about to expire, the building still remaining incomplete and unoccupied, and no work upon it being in progress, a vacancy permit, instead of the builder's permit, was indorsed upon the policy for the period of 30 days; and it was promised the plaintiff by the agent of the defendant that such vacancy permit should be

indorsed upon the policy by the agent of the defendant at the expiration of every 30 days until the work of completing the building should be commenced, or until the plaintiff should be notified otherwise. This was done in fact for each 30 days up to October 1st, when it was not done only because, through inadvertence, the agent of the defendant failed to do it, and the building was burned within the period of the 30 days next ensuing. Had the agent of the defendant made the indorsement upon the policy of the vacancy permit on the 1st of October, as he promised the plaintiff he would do, and as the plaintiff in good faith relied upon him to do, this question could not have arisen in this case. The evidence clearly shows that the agent of the defendant promised the plaintiff that this indorsement should be made upon the policy every 30 days; that the agent of the defendant had ready access to the policy for the purpose of making such indorsement; that for two of the periods of 30 days each the agent of the defendant did actually make such indorsement upon the policy; and that he failed to do it for the third of such periods only through his own inadvertence, which was his own fault, and for which the plaintiff is in no wise to blame. The agent of the defendant solicited the insurance and issued the policy with full knowledge that the house was not completed, and must remain vacant for an indefinite period. He was fully aware that the house had remained vacant from the day he insured it, and his promise to keep the insured protected from loss or risk by indorsing upon the policy a vacancy permit every 30 days must be taken as a waiver of the condition contained in the policy. His failure to make the indorsement upon the policy as he promised the plaintiff he would do, whether such failure was through inadvertence or otherwise, cannot be used to defeat the plaintiff in seeking the indemnity which the defendant had contracted to secure to him.

"If, at the time the agent of the company received the premium of insurance and delivered the policy, he had knowledge of the vacation of the property, and did not then avoid the policy, but treated it as valid and subsisting, such conduct of the agent was a waiver of the condition, and a breach of it could not be relied on by the defendant to defeat the plaintiff's recovery." Georgia Home Ins. Co. v. Kinnier's Adm'x, 28 Grat. 106, 107. "Such waiver or estoppel (for the terms 'waiver' and 'estoppel' may be indifferently used in application to the subject we are now considering) may take place either pending the negotiation for the policy, or after such negotiation has been completed, and during the currency of the policy, and either before or after forfeiture incurred. Such waiver may be made by a general agent, acting within the scope of his powers, needs no consideration to support it, and may be by parol, although the written consent of the insurer is required by the terms of the policy. Nor will the party insured be bound, nor ought he to be bound, by any instructions given by the insurer to his agent, limiting the general powers possessed by the latter in relation to the subject of the agency, unless such instructions are made known to the assured." Id. 108.

Further citation of authorities on this point is unnecessary.

The court has discussed and disposed of all the material questions in the case presented in the pleadings and the arguments, except one, which was raised by counsel for the plaintiff, arising under section 3252 of the Code of Virginia. This statute, in brief, provides that the conditions of an insurance policy shall be printed

in type as large or larger than that commonly known as "long primer," or be written with pen and ink in or on the policy. The preamble and the act, as originally enacted (see Acts Assem. Va. 1877–78, pp. 80, 81), are as follows:

"Whereas, it is the custom of many insurance companies to issue policies of insurance with conditions and other restrictive provisions printed in small type, difficult to be read and likely to escape the attention of the insured:

"(1) Be it enacted by the general assembly of Virginia, that in any action against an insurance company or other insurer, founded upon a policy of insurance issued after the first day of July, eighteen hundred and seventy-eight, no failure to perform any condition of the policy, nor violation of any restrictive provision thereof, shall be a valid defense to such action, unless it appears that such condition or restrictive provision is printed in type as large or larger than that in which this act of assembly is printed, to-wit: that commonly known as long primer type, or is written with pen and ink in or on the policy."

The conditions and restrictive provisions in the policy sued on here are not printed in compliance with the requirements of the statute, and the policy is dated subsequent to the 1st of July, 1878. The argument of counsel on this statute has not been by any means exhaustive. Counsel for the plaintiff contend for its application to all the grounds raised by the defendant, except as to the question of an insurable interest. Counsel for the defendant insisted in the oral argument of the case that the statute is illegal, as being in conflict with that provision of the constitution of the United States which inhibits a state from passing any act impairing the obligation of a contract, but they do not refer to it in their written brief. The court, as at present advised, sees no ground to question the validity of the act. It is not in conflict with any provision of the constitution of the United States, being prospective in its operation, nor is it in conflict with the constitution of the state of Virginia. Its enactment is within the legislative powers of the state government. The reason recited in the preamble of the act for its passage is a sound one, and the act is in accord with a wise public policy, reasonable and just in its requirements. It is applicable to the conditions of the policy on which this action is based. The court has decided the case on other grounds, but if it were necessary to pass upon this question the court would hold that the said conditions are invalid as a defense to this action, because they do not conform to the requirements of the statute. Judgment will be entered for the plaintiff in the sum of $3,170.54 with interest from the 20th day of December, 1892, until paid, and the costs of this action.