PHENIX INS. CO. OF BROOKLYN, N. Y., v. KERR.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1904.)

No. 1,966.

1. PRACTICE—PEREMPTORY INSTRUCTIONS—WAIVER OF JURY.
   Where at the close of a trial to a jury each party requests a peremptory instruction in his favor, and the court grants one of the requests, that ruling constitutes a general finding for the successful party by the court, and the only questions it presents in an appellate court are, was the finding without substantial evidence to support it? and, was there error in the court's declaration or application of the law?

2. INSURANCE — UNCONDITIONAL OWNERSHIP — PURCHASER UNDER CONTRACT HAS.
   The interest of a purchaser of property, which he has unqualifiedly agreed to buy and which the former owner has absolutely contracted to sell to him upon definite terms, is the sole and unconditional ownership within the true meaning of the ordinary clause upon that subject in insurance policies, because the vendor may compel the vendee to pay for the property and to suffer any loss that occurs.

3. SAME—OPTION TO PURCHASE—UNCONDITIONAL OWNERSHIP.
   The interest of an owner of property which another holds under his option to purchase, which is irrevocable by the owner, but which the holder of the option has not bound himself to accept, and which he is free to abandon, is the sole and unconditional ownership of the property within the proper interpretation of the clause upon that subject in insurance policies, because the owner cannot compel the holder of the option to take the property or suffer the loss.

4. SAME—PROOFS OF LOSS—DENIAL OF CONTRACT—WAIVER OF PROOFS.
   A distinct denial by an insurance company of liability under a policy after the loss, and within the time prescribed for the proofs, upon the ground that there was no contract of insurance, is a waiver of proofs of loss, because in such a case the proofs do not tend to induce the company to pay the loss, and they are futile.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

H. C. Brome (A. H. Burnett, on the brief), for plaintiff in error.

C. C. Wright (John M. Ragan and John F. Stout, on the brief), for defendant in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

¶ 2. See Insurance, vol. 28, Cent. Dig. §§ 347, 618.

SANBORN, Circuit Judge. This is an action on a policy of insurance against fire for damages caused by the burning of an elevator. The complaint was in the usual form. The answer was that the policy had been canceled before the fire, that the insured was not the sole and unconditional owner of the property, and that no proofs of loss had been made. The plaintiff replied that the company had denied its liability on the ground that there was no contract of insurance, and had thereby waived the proofs of loss. The case was tried to a jury. At the close of the trial the plaintiff requested the court to give an instruction to the effect that the jury should return a verdict in his favor, the defendant asked the court to charge the jury to find a verdict for the insurance company, and the court told the jury to return a verdict for the plaintiff. This instruction is the alleged error in this case.

Where each of the parties to a trial by jury requests the court to charge them to return a verdict in his favor, he waives his right to any finding or trial of the issues by the jury, and consents that the court shall find the facts and declare the law. An acceptance of these waivers and a peremptory instruction by the court in favor of either party constitutes a general finding by the court of every material issue of fact and of law in favor of the successful party. The case is then in the same situation in which it would have been if both parties had filed a written waiver of a jury and it had been tried by the court. Each party is estopped by his request from reviewing every issue of fact upon which there is any substantial conflict in the evidence, and the only questions which the instruction presents to an appellate court are, was the court's finding of facts without substantial evidence to sustain it? and was there error in its declaration or application of the law? U. S. v. Bishop (C. C. A.) 125 Fed. 181, 183; Bowen v. Chase, 98 U. S. 254, 264, 25 L. Ed. 47; Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 39 L. Ed. 654; The City of New York, 147 U. S. 72, 77, 13 Sup. Ct. 211, 37 L. Ed. 84; Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525; King v. Smith, 110 Fed. 95, 97, 49 C. C. A. 46, 48, 54 L. R. A. 708; The Francis Wright, 105 U. S. 381, 26 L. Ed. 1100; Merwin v. Magone, 70 Fed. 776, 777, 17 C. C. A. 361, 363; Chrystie v. Foster, 61 Fed. 551, 9 C. C. A. 606; Stanford v. McGill (N. D.) 72 N. W. 938, 952; Mayer v. Dean, 115 N. Y. 556, 22 N. E. 261, 5 L. R. A. 540; Provost v. McEncroe, 102 N. Y. 650, 5 N. E. 795.

The first question for consideration, therefore, is, was there any substantial evidence in support of the finding of the court below that the policy in suit was not canceled or surrendered? There was evidence that the plaintiff was the owner and that Rundberg & McCann were the lessees of, and the holders of an option to purchase, the elevator, which was the subject of this litigation, under a contract to keep it insured for the benefit of the plaintiff. McCann had paid the premium—$80—upon the policy in suit, and had caused Rohrer, the recording agent of the defendant, to issue and deliver it to the plaintiff in November, 1900. The policy, by its terms, promised indemnity against loss by the burning of the elevator for the term of one year. On December 5, 1900, Rohrer received an order from Chicago to cancel the policy. On December 12, 1900, after some conversation with McCann and with Coryell, the state agent of the defendant for the state of Nebraska, he wrote, coun-

tersigned, and placed in his safe a policy of the Milwaukee Mechanics' Insurance Company, which by its terms insured Kerr against loss by fire on this elevator. He debited the Milwaukee Company and credited the Phenix Company with the $80 premium upon his account books, and wrote the word "Canceled" across his register of the Phenix policy. He wrote the Milwaukee policy and took the action which has been described for the purpose of substituting that policy for the policy of the defendant upon which this action is founded. While matters were in this situation, and on December 16, 1900, the elevator burned. On the next day Rohrer went to the plaintiff, Kerr, who still held the Phenix policy, told him what he had done, and that, in view of the entries upon his books, he rather thought that the Milwaukee Company was liable for the loss. Thereupon Kerr delivered the Phenix policy to Rohrer, and took from him the Milwaukee policy. Rohrer testified that Mr. Ragan, the attorney of the plaintiff, subsequently told him that he might deliver the Phenix policy to the state agent, Coryell, and they would make no claim under it. But Mr. Ragan denied that he ever made any such statements. Kerr brought an action for his loss against the Milwaukee Mechanics' Company upon the policy which he had taken in exchange for the Phenix policy after the fire, and failed to recover. The judgment in that case was brought to this court, and was affirmed. Kerr v. Milwaukee Mechanics' Ins. Co., 117 Fed. 442, 54 C. C. A. 616. The evidence which conditions the question whether or not the Phenix policy was canceled before the loss in this case does not differ materially from that which was produced and is set forth more at length in the case against the Milwaukee Company. In that case we held that Rohrer had no authority from Kerr to consent to the cancellation of the Phenix policy, and that, as that policy provided that it could be canceled by the company only by a return of the unearned premium after a notice of five days, and no notice had been given to Kerr, who held the policy, and no premium had been returned before the fire, the policy of the Phenix Company was valid and that of the Milwaukee Company was void when the loss occurred. Nothing has been presented in this case to lead us to reverse or modify that conclusion, and we adhere to it. When, therefore, Rohrer went to Kerr with the Milwaukee policy the morning after the fire, that policy was useless and valueless and Kerr had a valid claim against the Phenix Company for about $3,500 on account of the loss of his elevator. The surrender by Kerr of the Phenix policy and his acceptance of the Milwaukee policy in lieu of it neither released, avoided, nor affected this claim, because the exchange was not made or intended for that purpose and there was no consideration for it. The finding of the court below, therefore, that the Phenix policy was not canceled before the loss, and that the plaintiff's claim under it was not avoided or released thereafter, was not without substantial and sufficient evidence to sustain it, and it is affirmed.

Was the interest of the plaintiff, Kerr, in the elevator other than the unconditional and sole ownership? The evidence was that Kerr bought, paid $6,000 for and took the title to the elevator. Thereupon he made a written agreement with Rundberg & McCann to the effect that they should have the possession and use of the property for a monthly rental of $100 and for the payment of the premium on the insurance; that they

should be at liberty to pay more than $100 per month if they saw fit; that, if they failed to pay as much as that amount for two successive months, the contract should cease, and Kerr should retain the moneys he had received, but that, if they should continue to make the payments until they should aggregate $6,000 and interest at 10 per cent. per annum, Kerr would convey the elevator to them. When the loss occurred, Rundberg & McCann were not in default. They had paid about $1,200 under this contract, and they were in the possession of the property. It is contended that this transaction constituted a loan of $6,000 by Kerr to Rundberg & McCann, and that the conveyance by the original vendor to Kerr was in fact a mortgage to secure the payment of this loan. But while there is testimony to the effect that Kerr bought the elevator for Rundberg & McCann with the undoubted expectation that they would use it, and with the hope that they would purchase it, the entire evidence taken together, and especially the written agreements between the various parties, which must, in the end, control, do not sustain the position that this was a loan. Rundberg & McCann never agreed to repay the $6,000 to Kerr, nor did they ever contract to buy and pay for the property. It is improbable that Kerr loaned $6,000 to them without taking any promise or obligation for the repayment of this amount of money. The written agreement between them negatives this idea. It is not an agreement of purchase and sale. It is an option contract—an agreement to give Rundberg & McCann the option to purchase the elevator as long as they failed to make default for two successive months in the payment of the monthly rentals. It is a unilateral contract, because Rundberg & McCann did not bind themselves to purchase the property, or to pay the rentals for any specified time. When they made their first payment under the agreement, the option undoubtedly became irrevocable by Kerr, because he had accepted a consideration for it, and it continued in that condition until the fire because Rundberg & McCann continued to make the specified payments. But Rundberg & McMCann made no irrevocable contract. They never agreed to accept the option or to purchase the property, and they were at liberty to renounce the one and to abandon the other at any time. Was Kerr the sole and unconditional owner of the elevator in this state of the case? The object of the provision in policies of insurance that they shall be void if the interest of the assured in the property is not the sole and unconditional ownership of it is to prevent gambling contracts, and to protect the companies against the claims of those who have no insurable interest in the property injured or destroyed. The purchaser of the property, who is in the possession of it under a contract whereby the former owner agrees to sell and the buyer absolutely binds himself to purchase and to pay an agreed price for the property, is almost universally held to be the unconditional owner of it under the clause under consideration, because the loss from any injury or destruction of the property falls upon him. If the owner has agreed to sell and the vendee has agreed to buy on definite terms, the purchaser is the sole and unconditional owner of the property within the true meaning of the clause upon this subject in insurance policies, because the vendor can compel the purchaser to pay for the property notwithstanding its injury or destruction, and hence to suffer the loss

occasioned thereby.   Milwaukee Mechanics' Ins. Co. v. Rhea & Son (C. C. A.) 123 Fed. 9, 11, 13 Am. & Eng. Ency. of Law (2d Ed.) 178, 179, and cases cited; Hough v. City Ins. Co., 29 Conn. 10, 76 Am. Dec. 581; Rumsey v. Phœnix Ins. Co. (C. C.) 1 Fed. 396; Amsinck v. American Ins. Co., 129 Mass. 185; Wainer v. Milford Fire Ins. Co., 153 Mass. 335, 26 N. E. 877, 11 L. R. A. 598; Redfield v. The Holland Ins. Co., 56 N. Y. 354, 15 Am. Rep. 424; Pelton v. Westchester Ins. Co., 77 N. Y. 605; Dupuy v. Delaware Ins. Co. (C. C.) 63 Fed. 680.   But if the owner gives to another the option to purchase a piece of property, and the latter does not irrevocably accept the offer and definitely agree to make the purchase, the loss of its injury or destruction falls upon the owner of the property, and not upon the owner of the option, because the latter is not bound to take or pay for the property, and he cannot be compelled to do so.   And while the owner of the option may accept it, and compel the owner of the property to comply with its terms, until the owner of the option does so he has no interest in the property.   He has nothing but a mere right to acquire an interest, and this is neither the ownership nor any interest in the property which impinges upon its unconditional ownership by him who gave the option.   Richardson v. Hardwick, 106 U. S. 252, 254, 1 Sup. Ct. 213, 27 L. Ed. 145; Gustin v. Union School District (Mich.) 54 N. W. 156, 34 Am. St. Rep. 361. The result is that the owner of property who has given an irrevocable option to purchase it to one who has not agreed to accept the option or to buy or to pay for the property  still has the unconditional ownership of it within the proper interpretation of the clause upon that subject in policies of insurance, and he may maintain an action upon a policy for injury to it by fire.   The plaintiff was in that situation.   He was the owner of the elevator.   He had given an option to purchase it to Rundberg & McCann.   They had paid $1,200 for that option, and in partial acceptance of it, so that it had become irrevocable.   But they had not agreed to complete their acceptance, or to buy the property, and they were not bound to take or to pay for it.   They had no interest in it, but a mere right to acquire an interest which they were at liberty to enforce or to abandon.   The interest of the plaintiff was the sole and unconditional ownership, and his action upon the policy was well brought.

The policy required the insured to furnish proofs of loss within 60 days after the fire.   A distinct denial by an insurance company of liability under a policy after the loss, and within the time prescribed by the proofs, upon the ground that there was no contract of insurance, is a waiver of proofs of loss, because in such a case the proofs do not tend to induce the company to pay the loss, and they are useless.   Tayloe v. Ins. Co., 9 How. 390, 403, 13 L. Ed. 187; Knickerbocker Life Ins. Co. v. Pendleton, 112 U. S. 696, 5 Sup. Ct. 314, 28 L. Ed. 866.   Was there any substantial evidence in this case of a denial of the validity of the policy within 60 days after the loss?   Rohrer, the recording agent of the defendant, testified that he issued the policy; that he received an order from Chicago to cancel it on December 5, 1900; that the fire occurred on December 16, 1900; and that on the next day he told the plaintiff what entries he had made on his books; told him that he rather thought that the Milwaukee Company was the one liable, and obtained

from him the Phenix policy in place of the Milwaukee policy which he delivered to him. Mr. Ragan, the attorney for Kerr, testified that Mr. Coryell, the state agent for the Phenix Company, told him that the Milwaukee people were liable, and that his company was not liable, because there had been a substitution of policies. The testimony of Ragan is contradicted by the testimony of Coryell, but the statement of Rohrer is undisputed. It is contended that neither Rohrer nor Coryell had any authority to waive proofs of loss without a written indorsement of the waiver upon the policy under the usual clause therein which requires a waiver to be evidenced in that way. But Rohrer received the order from Chicago on December 5, 1900, to cancel the policy. That order must now be deemed the order of the company itself because the company has ratified the order and founded one of its defenses to the policy upon it. It necessarily follows that Rohrer's acts and sayings while he was engaged in attempting to execute the order were the acts and sayings of the company, and that his declaration to Kerr that the Milwaukee Company was liable was, in effect, a denial of the liability of the defendant, and furnished evidence to sustain the finding of the court below to that effect, as well as its conclusion of law that this denial of liability was a waiver of the proofs of loss.

Our conclusion is that there was no error in the finding or in the conclusions of the trial court, and that the judgment below must be affirmed. It is so ordered.