**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,**
Appellant,

v.

**The BOARD OF PUBLIC INSTRUCTION OF MADISON COUNTY, FLORIDA, and J. C. Thomas,** Appellees.

No. 16048.

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1956.

Rehearing Denied Jan. 8, 1957.

Jones, Circuit Judge, dissented.

J. Henson Markham, Osborne, Copp & Markham, Jacksonville, Fla., of counsel, for appellant.

Wm. McChesney, R. C. Horne, Chas. E. Davis, Davis, Davis & McClure, Madison, Fla., of counsel, for appellees.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

The principal question is the amount recoverable under a fire insurance policy. November 1, 1951, National Fire Insurance Company insured for a term of five years the Board of Public Instruction of Madison County, Florida, against loss by fire of twenty-eight school buildings, each separately valued, and of the contents of some of the buildings, the values totaling $571,500. One of the buildings was the school at Enterprise, four miles south of Lee, Florida, valued at $6,500.00.

On the list of valuations appeared the following: "Valuation Clause—The insurable value of each of the building items, as shown above, is set at the amount of insurance carried on each building." That statement was made in compliance with the Florida Valued Policy Statutes set forth in the margin.[1]

Nearly two years after the issuance of the Policy, the Board advertised for the sale of the Enterprise school property. J. C. Thomas submitted his bid of (1) $700.00 for the land without the building, (2) $2,300.00 for the building without the land, and (3) $3,000.00 for the land and building. The bids were opened by the Board at its meeting on September 3, 1952, at which meeting Thomas was present, and he was the successful bidder for the entire property.

The Secretary of the Board immediately left the meeting and made a telephone call to Mr. F. E. Naughton of the Morrow Insurance Agency, which had delivered the fire insurance policy to the Board.[2] In the margin we quote the substance of the phone conversation according to the Secretary[3] and to Mr. Naughton.[4] About two days later, Mr.

---

1. "§ 631.04. Value of buildings insured to be fixed in policy of insurance

"Any insurer insuring any building or other structure in this state against loss or damage by fire or lightning, shall cause such building or other structure to be examined by an agent or other representative of the insurer and full description thereof to be made, and the insurable value thereof to be fixed by such agent or other representative and written in the policy.

"In the absence of any change increasing the risk without the consent of the insurers, in case of total loss the whole amount mentioned in the policy upon which the insurers receive a premium shall be paid, (except in case of losses under policies carrying a co-insurance clause as authorized by § 631.12), and in case of partial loss the full amount of the partial loss shall be paid, but in no case shall the insurer be required to pay more than the amount upon which a premium is paid.

"The insurer shall be estopped from denying that the property insured was worth, at the time of insuring, the amount of the insurable value as fixed by the agent or other representative."

"§ 631.05. Measure of damage in case of loss

"In case of the total loss of the property insured the measure of damage shall be the amount upon which the insured paid a premium, and, in case of partial loss, the measure of damage shall be such part of the amount upon which premiums are paid as the damage sustained is part of the insurable value of the building or other structure as fixed by the agent of the insurer. Provided, any fire insurance company authorized to transact business in this State may, by appropriate riders or endorsements or otherwise, provide insurance indemnifying the insured for the difference between the insurable value of the insured property at the time any loss or damage occurs, and the amount actually expended to repair, rebuild or replace within the State with new materials of like size, kind and quality, such property as has been damaged or destroyed by fire or lightning."

"§ 92.23. Rule of evidence in suits on fire policies for loss or damage to building

"In all suits or proceedings brought upon policies of insurance on buildings against loss or damage by fire, hereafter issued or renewed, the insurer shall not be permitted to deny that the property insured was worth, at the time of insuring it by the policy, the full sum insured therein on such property." Florida Statutes, 1955, F.S.A.

2. Under Florida Statutes, § 625.01, F.S.A., Mr. Naughton and the Morrow Insurance Agency, no doubt, were the agents of the insurance company, and that point is not contested.

3. "A. The best I recall, 'Mr. Naughton, the Board has accepted the bid from J. C. Thomas on the Enterprise School property; you are instructed to alter the policy and include the name of J. C. Thomas as a member of the insured group', with the phrase 'as his interest shall appear'.

"Q. That's the instruction you gave him?

"A. That's the instruction I gave.

"Q. What did you say about the Board of Public Instruction in the policy?

"A. To leave the Board of Public Instruction as it was written and to add the name of J. C. Thomas; with the conjunction 'and' J. C. Thomas."

4. "Q. What did he say to you, please?

"A. He said that he wanted the—as

Thomas approached Mr. Naughton and a conversation ensued as set forth in the footnotes, according to Thomas[5] and according to Naughton.[6]

On September 3, the same date on which he had received the telephone notice from the Secretary of the Board, Naughton wrote to the H. C. Hare Company, the general agent of the insurance company,[7] and, in turn, on September 8, H. C. Hare Company wrote the insurance company.[8]

In the early morning hours of September 10, 1952, the Enterprise school building was totally destroyed by fire. The Board filed its proof of loss, claiming that its interest in the property at the time of the fire was entire and that it was entitled to the full amount of $6,-500.00. The policy contained the usual provision that the amount of loss for which the company might be liable would be payable 60 days after proof of loss. Before the expiration of that 60 days, the company filed what it captioned "Complaint for Interpleader and Declaratory Relief", in which it expressed its willingness to pay the amount of $2,-

I recall it, he wanted our records to show that the building had been purchased, the unit, rather, had been purchased by J. C. Thomas and that he wanted our records to show that his interests be protected as his interests may appear.

"Q. And what did you say to him?

"A. I just told him that I would get a letter off immediately to that effect.

"Q. Did he say anything to you about what would happen to the Board of Public Instruction and the policy or any change made in it, or did you say anything to him in that regard?

"A. No, my understanding was that it was to remain as the—the policy was to remain as written, with the exception that Mr. Thomas was to be added for whatever interest he may have."

5. "A. I just asked him had he heard anything from the papers, that if I was protected, I wanted to get protection in that property down there.

"Q. That is what you said to him?

"A. That is what I said to him.

"Q. What did he say to you?

"A. He said, 'I sent it in but I ain't got no return.' I think that's the very words Mr. Naughton used."

6. "A. The best I remember he came up to me and told me he was interested in having his interest protected because he had bought the building and that he had a sale for it; and the sale for the building amounted to, as I remember it, around $3,000, and he would have the land. And he asked me for insurance on the building, which he stated was worth more than he had in it; and I told him that in my opinion that he had no insurable interest in the building; and he was worried about it. He said the School Board was going to hold him responsible for the building, and I told him that if the School Board couldn't produce the building at the time that the sale was completed that whatever binder he then put up would be returned to him, the School Board couldn't make him pay for it."

7. "Re: National Policy #590784
"Board of Public Instruction
"Madison County, Florida

"We have just been informed by the county superintendent that Item No. 16, Enterprise School Building, has been sold to J. C. Thomas who will hold a contract for title, with the above assured as owner, until the transaction is completed. "I will appreciate it very much if you will give this matter the proper handling in order to protect our assured and the purchaser of this building.

"Thanking you and with best personal regards, I am

"Sincerely yours,
/s/ Fred
"F. E. Naughton

"FEN/ji

"P.S. As soon as the deeds are turned over to Mr. Thomas on this building this item will be eliminated from the above numbered policy."

8. "Policy No. 590784, Board of Public Instruction,
"Madison County, Florida.

"We have just been advised that Item #16, Enterprise School Building, has been sold to J. C. Thomas, who will hold a contract for title with the Board of Public Instruction as owner until the transaction is completed. As soon as the deeds are turned over to Mr. Thomas this item will be eliminated from the policy and in the meantime our agent has bound coverage to protect the interest of both parties.

"Trusting this is satisfactory, we remain

"Yours very truly,
"For H. C. Hare Co.
"HHJ:elg."

300.00 in full discharge of its liability under the policy, though it made no deposit. Both the Board and Thomas were made defendants and the court was asked to adjudge and declare the rights and liabilities of the parties "under said policy of insurance."

In its complaint, the insurance company relied on the provision insuring the Board in no event "for more than the interest of the insured," and took the further position that,

"the defendant, J. C. Thomas, has an interest in and claim under the policy limited to the right to have the plaintiff pay to The Board of Public Instruction of Madison County, Florida, the unpaid balance of the $2,300 purchase price of the building and to pay the balance, if any, of such $2,300 to defendant, J. C. Thomas."

The Board filed its answer and counterclaim in which it relied on the Florida Valued Policy Statutes and claimed to be entitled to the sum of $6,500.00. Thomas filed his answer and counterclaim, also relying on said statutes and claiming that the Board was entitled to receive $2,300.00 and that he, Thomas, was entitled to receive the balance of the agreed insurable value, or the sum of $4,200.00. There were further pleadings which need not be recounted.

The evidence was without material dispute. It disclosed that the purchase contract entered into between the Board and Thomas on September 3 was modified on December 3 by the Board receiving from the defendant Thomas the sum of $700.00 and, in consideration therefor, executing and delivering to Thomas a deed for the seven acres of land upon which the Enterprise school building had been standing. Subsequently, the Board and Thomas entered into a stipulation wherein they agreed that if the court should find against the insurance company "for the sum of $2,300.00 only, said sum shall be awarded to the defendant, The Board * * *, together with any attorney's fees assessed against the plaintiff," and that any sums found

against the plaintiff insurance company "in excess of said sum of $2,300.00, shall be awarded by the Court equally to the defendant, The Board * * *, and the defendant, * * * Thomas, except that any attorney's fees allowed by the Court against the plaintiff shall be awarded two-thirds thereof to the defendant, The Board * * *, and one-third thereof to the defendant, * * * Thomas."

The court thought that the Value "d" Policy Statutes applied and that insurance company was liable for the agreed insurable value of $6,500.00, and, accordingly, it made findings of fact and conclusions of law and entered final judgment against the insurance company for that amount plus interest and, also, for attorneys' fees in the amount of $1,-500.00, making division in accordance with the stipulation entered into between the Board and Thomas.

The insurance company appealing insists that the amount of its liability under the policy was only $2,300.00, or certainly not more than $3,000.00; that it was not liable for attorneys' fees or interest; that the counterclaims of both the Board and Thomas were premature, and no judgment should have been entered in favor of either of them.

All must concede that, but for the contract of sale of September 3, 1952 between the Board and Thomas, the insurance company, under the Florida Valued Property Statutes, would owe the Board the agreed value stated in the policy $6,-500.00. The question presented is the effect of that contract of sale and the subsequent dealings between the parties. Did Thomas become an additional insured under the policy, or should some other effect be ascribed to that contract and the subsequent dealings? Only upon the assumption that the Board remained the sole insured could the company seek comfort in the provision of the policy that it would be liable in no event "for more than the interest of the insured."

Clearly, we think, Thomas was added as another insured. That was what the Secretary of the Board request-

ed (footnote 3, supra) and what Mr. Naughton understood (footnote 4, supra). Further, Naughton's letter to the general agent (footnote 7, supra) requested it "to protect our assured and the purchaser of this building", and the general agent's letter to the company (footnote 8, supra) informed it that "our agent has bound coverage to protect the interest of both parties."

■ A further possible alternative, that of complete novation, we raise only to say that we think it clear that there was no such result.[9] The insurance company has consistently treated its liability as arising under the particular policy of insurance, and has asked for a declaration of "the rights and liabilities of the parties under said policy of insurance." That is in accordance with the telephone conversation (footnotes 3 and 4, supra). Further, each of the letters (footnotes 7 and 8, supra) contained a statement that "As soon as the deeds are turned over to Mr. Thomas this item will be eliminated from the policy", leaving the clear inference that until such time the policy remained in force on this item.

For its position consistently maintained,[10] the company relies upon the holding in Insurance Co. of North America v. Erickson, 50 Fla. 419, 39 So. 495, 498, 2 L.R.A.,N.S., 512, that,

"Upon the execution and delivery of the contract of sale set up in the defendant's plea the vendor, Erickson, became the holder of the legal title, in trust for his vendee, Burch, as security for the deferred purchase price due from the latter to the former, and the vendee, Burch, held the purchase price as trustee for his vendor. 2 Story's Eq.Juris. (13th Ed.) § 789."

That case, however, goes further and approves the following quotation from Phenix Insurance Co. of Brooklyn, New York v. Kerr, 8 Cir., 129 F. 723:

" 'The interest of a purchaser of property, which he has unqualifiedly agreed to buy and which the former owner has absolutely contracted to sell to him upon definite terms, is the sole and unconditional ownership within the true meaning of the ordinary clause upon that subject in insurance policies, because the vendor may compel the vendee to pay for the property and to suffer any loss that occurs.' " 39 So. at page 498.

Thomas, then, not only held the purchase price as trustee for the Board, but he also became the equitable owner of the property. Certainly, the Board and Thomas together owned all interests in the real

---

**9.** When the company was advised of the contract of sale to Thomas, it had the right to cancel the policy because of the change of ownership and return the unearned premium, or it could retain the premium and keep the policy in force, thereby binding itself to a parol contract subject to specific performance. Orient Insurance Co. v. Peacock, 115 Fla. 525, 155 So. 724. An assumed novation would leave uncertain the amount of the insurance, the rate of premiums, the duration of the policy, and might not constitute a sufficiently specific parol contract to be valid and enforceable. See Collins v. Aetna Insurance Co., 103 Fla. 848, 138 So. 369; Centennial Insurance Company v. Parnell, Fla., 83 So.2d 688.

**10.** And thus stated in its complaint:
"As the result of the agreement effected on September 3, 1952, between defendants for the sale by defendant, The Board of Public Instruction of Madison Coun-

ty, Florida, and the purchase by defendant, J. C. Thomas, of the land and improvements constituting said Enterprise School property which was in the process of being consummated at the time the building on said property was destroyed by fire, The Board of Public Instruction of Madison County, Florida, had an interest in the policy which is limited to security for the unpaid balance of the sale price and plaintiff's obligation under the policy to The Board of Public Instruction of Madison County, Florida, is specifically limited to such interest, and the defendant, J. C. Thomas, has an interest in and claim under the policy limited to the right to have the plaintiff pay to The Board of Public Instruction of Madison County, Florida, the unpaid balance of the $2,300 purchase price of the building and to pay the balance, if any, of such $2,300 to defendant, J. C. Thomas."

property. The district court, we think, reached the proper conclusion. See 29 Am.Jur., Insurance, § 1196; Annotation 68 A.L.R. 1352; 4 Appleman's Insurance Law and Practice, Chap. 131, p. 629, et seq.; 1 Couch's Encyclopedia of Law, § 74(b), p. 108.

■ The Federal Declaratory Judgment Act contemplates that all necessary or proper relief based on the declaratory judgment should be granted.[11] By the filing of its complaint, therefore, the appellant waived the sixty day provision of the policy and precipitated the controversy. Whether the counterclaims were essential or not, the court did not err in granting complete relief, including interest.[12] Further, under the Florida Statute,[13] attorneys' fees [14] were properly added to the judgment.

Finding no reversible error in the record, the judgment is

Affirmed.

JONES, Circuit Judge (dissenting).

Insurance is a contract of indemnity against loss or damage. Where loss or damage occurs after a contract of sale has been made but before conveyance the loss generally falls on the purchaser. Here the purchaser's interest was insured by a binder of the insurance company. I do not think it was intended that the Florida Statute should be construed to permit windfall profits to either vendor or vendee. Here, it seems to me, the Court has not only authorized an unjust enrichment but has sanctioned an agreement between the claimants as to how they should participate in their gain. I cannot see how it can be said that at the time of the fire the School Board had an interest in excess of the amount of unpaid purchase money. I cannot see that its vendee was insured for any amount in excess of the purchase price. It will not be assumed that the School Board sold for $2,300 a structure that had a value of $6,500. I respectfully dissent.

Rehearing denied: JONES, Circuit Judge, dissenting.

11. Thus, 28 U.S.C.A. § 2202 provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

12. It might further be again noted that the appellant styled its complaint as "Complaint for Interpleader and Declaratory Relief", though it was not a true interpleader suit, no deposit having been made.

13. "§ 625.08 Attorney's fees in certain cases upon contracts and policies of insurance.—Upon the rendition of a judgment or decree by any of the courts of this state against any insurer in favor of the beneficiary under any policy or contract of insurance executed by such insurer, there shall be adjudged or decreed against such insurer, and in favor of the beneficiary named in said policy or contract of insurance, a reasonable sum as fees or compensation for his attorneys or solicitors prosecuting the suit in which the recovery is had.

"The amount to be recovered for fees and compensation for attorneys and solicitors against such insurer shall be ascertained and fixed by the court in chancery cases or a jury in common law actions, from testimony adduced for that purpose, and shall be included in the judgment or decree rendered in such cases."

14. "It was stipulated by and between counsel for the respective parties that no testimony shall be taken as to attorneys' fees, and that should the Court find that either of the defendants and counter-claimants, or both, are entitled to recover attorneys' fees from the plaintiff, that the Court shall determine and affix a reasonable amount as atorneys' fees."