EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. WINNING.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1893.)

No. 280.

1. CONFLICT OF LAWS—INSURANCE POLICY.
   A policy of life insurance which is delivered and the first premium on which is paid in the state in which the assured resides is governed by the laws of that state.

2. LIFE INSURANCE—WAIVER OF NOTICE AND PROOFS OF LOSS—EVIDENCE.
   Proof that, prior to a failure to pay a premium on a life insurance policy, the insurance company had declared its intention to forfeit the policy if such premium was not paid, and that, soon after the default in payment, the company declared the policy forfeited, and entered it as a lapsed policy in the company's books, is competent to establish a waiver of the provisions of the policy requiring notice and proof of loss.

3. SAME—ESTOPPEL—ASSERTION OF RIGHT—UNEQUAL KNOWLEDGE OF PARTIES.
   Such evidence is also admissible as tending to raise an estoppel against the company, when taken in connection with testimony by the assured's administrator that he was led to believe that the policy was no longer in force, by finding a notice of the intended forfeiture among the assured's papers; especially where the company knew, before it assumed to declare such forfeiture, that its power to do so was doubtful, and had been denied, and that the question was in litigation, while the administrator had no such information.

In Error to the Circuit Court of the United States for the Western District of Missouri.

At Law. Action by William E. Winning, administrator of Edward C. Hiett, deceased, against the Equitable Life Assurance Society of the United States, upon a policy of life insurance. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

Henry Hitchcock, for plaintiff in error.
James H. Austin, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. This is a suit on a life insurance policy for $2,500, which was issued on April 9, 1884, by the Equitable Life Assurance Society of the United States on the life of one Edward C. Hiett. Hiett paid the annual premium which became due on said policy on the 5th day of April in each of the years 1885, 1886, 1887, and 1888, but failed to pay the premium which became due on April 5, 1889. As the assured was a resident of Saline county, in the state of Missouri, at the time he became insured, and as the policy was delivered in that state, and the first premium was there paid, the contract evidenced by the policy is a Missouri contract, and is governed by the

laws of that state, within the rule announced in Society v. Clements, 140 U. S. 226, 11 Sup. Ct. Rep. 822. Under the laws of that state which were in force when the contract was entered into, the policy in suit did not become forfeited or void for failure to pay the annual premium on April 5, 1889, but the assured was entitled to such temporary insurance thereunder as might be purchased with three-quarters of the net value of the policy on that date, computed on the American Experience Table of Mortality, with 4½ per cent. interest per annum. Vide Rev. St. Mo. 1879, §§ 5983, 5985; Society v. Clements, supra. Hiett died on August 13, 1890, at the age of 35, and it is admitted that three-quarters of the net value of his policy on April 5, 1889, he having paid five full annual premiums previous to that date, was adequate to purchase temporary insurance to the amount specified in his policy for a period which expired on February 9, 1893. The Missouri statute securing the right to temporary insurance after the nonpayment of an annual premium, to which we have already referred, provides "that notice of the claim and proof of the death shall be submitted to the company in the same manner as provided by the terms of the policy within ninety days after the decease of the insured," (section 5985, supra;) and on the trial below the defendant company relied for its defense solely on the plea that Hiett's administrator did not give notice of his claim under the policy or submit proofs of death within 90 days next succeeding August 13, 1890. On the other hand, the plaintiff insisted that the provision requiring proofs of death to be submitted within 90 days had been waived by acts done and performed by the defendant company both prior and subsequent to the death of the assured.

As the assignments of error which we are called upon to review relate exclusively to the competency and sufficiency of the evidence which was received and relied upon in the circuit court to establish a waiver, it becomes necessary to state the character of that evidence somewhat in detail. It appeared from the face of the policy and the application therefor that, notwithstanding the laws of the state of Missouri, to which reference has been made, the defendant company nevertheless caused stipulations to be inserted therein that the policy should become void "if any premium or any installment of a premium was not paid when due," and that the assured should "waive and relinquish all right or claim to any other surrender value than that provided in the policy, whether required by the statute of any state or not." It was shown that a notice of the annual premium due on April 5, 1889, had been sent by the company to the assured in his lifetime, which contained a statement, in substance, that if such premium was not paid within one month after April 5, 1889, the said policy and all payments thereon would become forfeited. This notice was found by the administrator among Hiett's papers shortly after the death of the latter, and, as the administrator testified, it led him to believe that the policy was forfeited, and would not be paid, he having failed to find any receipt for the annual premium referred to in said notice among the papers of the deceased. It was further shown that the policy in

suit was formally declared forfeited for nonpayment of the premium of April 5, 1889, by a resolution of the insurance committee of the defendant company at a meeting held at the home office in New York on May 31, 1889, and that the policy was thereafter borne on the company's books both at its home office and at its St. Louis office as a forfeited policy.

The acts done and performed after the death of the assured which the trial court permitted to be proven with a view of establishing a waiver were substantially these:

It was shown that some time in the month of December, 1890, the plaintiff was informed by a traveling insurance agent, with whom he chanced to converse, that under the laws of Missouri the policy in suit had not lapsed in consequence of the nonpayment of the premium of April 5, 1889, but was still in force. Shortly after receiving such information the plaintiff authorized an insurance agent by the name of Burks, who resided in Saline county, Mo., to obtain from the defendant company the necessary blanks for the purpose of making out the customary proof of the death of the assured. Burks made an application for such blanks on December 18, 1890, by a letter addressed to the defendant's manager at St. Louis, Mo., and in such letter stated in substance that the blanks were wanted for the purpose of making proof of the death of "E. Hiet," who was insured in the defendant company. To such letter the company's representative at St. Louis replied, under date of December 19, 1890, that he had searched the records of the company "thoroughly," and had failed to find "the name of E. Hiet, or anything like it." The policy was thereafter placed for collection in the hands of plaintiff's attorneys, Messrs. Austin & Austin, of Kansas City, Mo., and the following letter was written by said firm to Benjamin May, the defendant's manager at St. Louis, Mo., on January 6, 1891:

"Dear Sir: We have in our possession for collection the tontine savings fund policy of your company, assurance on the life of E. C. Hiett. The number of the policy is 275,727. The assured, E. C. Hiett, is now dead, of which fact we are informed you have been notified. Will you please send us at once forms of proofs of loss as required by your company, upon receipt of which we will have the same made out in due form, and send to you.

"Please give this your prompt attention, and oblige,

"Yours, truly,                                    Austin & Austin."

On the 8th of January, 1891, the defendant's general agent replied to the foregoing letter, saying, in substance, that "the policy on the life of Mr. E. C. Hiett, * * * according to the records of the St. Louis office, was forfeited for nonpayment of premium due April 5, 1889." Under date of January 19, 1891, Messrs. Austin & Austin replied, in substance, that they claimed payment of the policy under the nonforfeiting law of Missouri, which entitled the assured to three years and eleven months extended insurance; and by return mail on January 20, 1891, they were advised by the company's agent at St. Louis that it was claimed by the company that the assured could waive the Missouri statute, and that the validity of such claim was pending before the supreme court of the United

States for its decision in Wall v. Equitable Life. Two other communications relative to the claim passed between the parties in the month of February following, but they are not of sufficient importance to deserve special notice. The following letter, however, was written by the defendant's attorneys at St. Louis, Mo., to the plaintiff's attorneys on March 2, 1891:

"Messrs. Austin & Austin, Attorneys, New York Life Building, Kansas City, Mo.—Dear Sirs: Referring to your letter of the 19th of January to Ben May, Esq., manager in this city of the Equitable Life Assurance Society of New York, we beg to say that the claim which you represent of policy No. 275,727, in the name of E. C. Hiett, has been placed in our hands by the company. We are instructed to say that the company are not prepared to acknowledge the claim which you make under the nonforfeiture law of this state, in view of the fact that the application for this policy contained, among other things, an express agreement, in consideration of the agreements contained in said policy, to 'specifically waive and relinquish all right or claim to any other surrender value than that provided in the policy, whether required by the statute of any state or not.' This, as the company is advised, excludes the claim made by you under the nonforfeiture law of Missouri. We desire to add for your information that the question thus presented has heretofore arisen, and is now pending on appeal in the supreme court of the United States in the case of Equitable Life, &c., v. Clements, Admr., No. 340, Oct. term, 1890, in which we are of counsel for the company. We expect that the case will be argued and submitted within a few weeks from now, and that the decision thereof will be conclusive of the claim made by you. Under these circumstances, we submit whether your client's interest would be prejudiced by waiting until such decision is made, which presumably will be not later than May next, and of which we will promptly advise you. If, however, you should think best to bring suit against the company without waiting for that decision, we will thank you to advise us without delay, and in what court you will probably proceed.
"Yours, truly, Hitchcock & Finklenburg."

The receipt of the foregoing letter was acknowledged by Messrs. Austin & Austin on March 4, 1891, and in May following they replied thereto more fully as follows:

"Kansas City, Mo., May 12th,1891.
"Dear Sirs: In accordance with the suggestion made by you in your letter of March 2d last, concerning the claim of Hiett against Equitable Insurance Association on policy No. 275,727, we decided to not commence suit until we should hear from the supreme court upon the case of Clements, administrator, against your company. We note to-day that the supreme court of the United States has decided the case adversely to your company. Please let us know at your earliest convenience if the company will insist upon suit on the policy held by us, or will settle with us, without suit, and what proofs, if any, it would be necessary for us to send in order to satisfy the company, if they desire to settle the matter without suit.
"Yours, truly, Austin & Austin."

"Messrs. Hitchcock & Finklenburg, Attorneys at Law, 404 Market St., St. Louis, Mo."

To the foregoing letter the following reply was sent:

"St. Louis, Mo., May 14th, 1891.
"Messrs. Austin & Austin, Attorneys, &c., N. Y. Life Building, Kansas City, Mo.—Dear Sirs: Acknowledging your favor of the 12th inst., in reference to claim of Hiett vs. Equitable Life, &c., Assn. on policy No. 275,727, I beg to say that I will, without delay, communicate with the Equitable Life Assurance Society in respect of said claim, and what course they may deem advisable to take in regard to it, and advise you.
"Yours, truly, Henry Hitchcock."

Some further correspondence took place during the months of May and June, 1891, in which the plaintiff's attorneys pressed for a definite answer as to whether the claim would be paid without suit, and the defendant company, in reply, excused its delay for not giving a definite answer. By a letter written as late as June 24, 1891, the attorneys for the defendant company advised the plaintiff's attorneys that they had requested the company to instruct their manager at St. Louis to forward blank proofs of loss. The letter concluded with the following statement: "Upon receipt of your proofs I do not doubt they will promptly act in the matter." On the 2d of July following a letter was written in behalf of the defendant company, inquiring when the assured died. To such inquiry plaintiff's attorneys replied, on the following day, that he died on the 13th day of August, 1890, and thereafter, on July 9th, and again on July 11, 1891, the claim was for the first time advanced, in letters written on behalf of the company, that the failure to submit proofs of death within 90 days after August 13, 1890, constituted a valid defense to the policy. No blank proofs of loss appear to have been furnished by the company to the plaintiff or his attorneys at any time, notwithstanding the repeated requests therefor, but on July 10, 1891, proper proofs of loss were submitted to the defendant company, which were received by it without protest or objection, and were thereafter retained.

Numerous errors have been assigned in the proceedings of the circuit court, but, taken altogether, they only present two material questions for our consideration, which may be stated as follows: Did the trial court err in permitting the plaintiff to show, with a view of establishing a waiver, that the defendant company had declared its intention to forfeit the policy if the premium of April 5, 1889, was not paid at maturity, and in permitting the plaintiff to further show that the company had in fact carried that purpose into execution on May 31, 1889, by declaring the policy forfeited, and by entering it on its books, both at its home office and at its St. Louis agency, as a lapsed policy? Secondly. Did the trial court err in refusing to charge at the conclusion of all of the testimony that there was no evidence from which the jury could find that the provision relative to proofs of loss had been waived, and that the jury should accordingly return a verdict in favor of the defendant?

In considering these questions it is important to bear in mind that the law does not favor forfeitures of any character, and that a provision in an insurance policy requiring notice and proofs of loss to be submitted within a given number of days after a loss or a death has occurred is a provision which is inserted exclusively for the benefit of the insurer, to enable it to inquire into the circumstances attending a loss or a death within a comparatively short period after it has occurred. For both of these reasons it has been repeatedly held that the provision in question is one which the insurer may easily waive, and that a waiver may be implied from any acts or conduct on the part of the insurer that are apparently inconsistent with an intention to insist upon a literal

v.58F.no.3—35

compliance with the condition. It is invariably held that a refusal by an insurer to pay a claim, after a loss has occurred, because of a breach of any of the substantive provisions of the policy, or because the policy was not in force, or because the loss occurred in consequence of a risk not covered by the policy, is in itself a waiver of the provision requiring notice and proofs of loss to be submitted within a specified number of days after the loss occurs. The cases to this effect are almost too numerous for citation, and only a few will be referred to. Tayloe v. Insurance Co., 9 How. 391, 396, 397; Norwich & N. Y. Transp. Co. v. Western Massachusetts Ins. Co., 34 Conn. 561, 570, and citations; Thwing v. Insurance Co., 111 Mass. 93, 110. In some of the more recent cases it has also been ruled that the provision in question may be waived by acts done by the insurer after the time has expired within which notice and proofs are required to be submitted, and that no new consideration is necessary to support a waiver of that character. In the case of Prentice v. Insurance Co., 77 N. Y. 483, 489, where the policy required notice of death to be forthwith given and full proofs to be submitted within twelve months, and no notice or proofs were submitted for more than two years after the death occurred, Andrews, J., said, in affirming the judgment against the insurer:

"It is now understood to be the doctrine of this court that no new consideration is required to support a waiver by an insurance company of a condition in respect to the time of serving proofs of loss, and that it may be done by acts or conduct occurring subsequently to the breach of the condition indicating an intention to waive such condition, although there is no new consideration, and although there may be no technical estoppel."

The same remark was repeated by Church, C. J., in Brink v. Insurance Co., 80 N. Y. 108, 112, and it was further said that—

"The filing of proofs of loss by a specified time is a condition made for the benefit of the company, which it may avail itself of or not; and if it determine to waive it, it cannot afterwards recall the waiver, and insist upon the forfeiture."

In the case of Goodwin v. Insurance Co., 73 N. Y. 480, 496, the court of appeals of that state further declared that—

"When an insurance company, by means of its officers or agents, in response to a claim for a loss, fails to say anything about the time of presenting the proofs after it has expired, but claims some other defense, the presumption is that it does not intend to interpose any other besides that named, and it is a fair inference to be derived from the fact that it was silent on the subject, that it designed to waive the violation of such condition."

We find nothing in other decisions from that state to which we have been referred (to wit, Devens v. Insurance Co., 83 N. Y. 168, and Armstrong v. Insurance Co., 130 N. Y. 560, 29 N. E. Rep. 991) which works any sensible modification of the law of waiver in its application to such provisions of insurance policies as are now under consideration. It seems to be the well-settled doctrine in that state, as it is elsewhere, that an insurance company must promptly disclose its purpose, if it intends to rest its defense to a claim for insurance on the technical ground that notice and

proofs of death were not submitted within the time specified in its policy. If it treats with the assured on other grounds, and asserts that the policy has become forfeited, or that other substantive conditions of the contract have been broken, it must assume the risk of having its conduct in that behalf construed as a voluntary abandonment of other less meritorious defenses.

In view of the authorities, and what has been said, we think it is manifest that the circuit court acted properly in refusing to charge that there was no evidence from which the jury could legitimately infer that the provision relative to proofs of loss had been waived by the defendant company. And in expressing that opinion we overlook for the time being all of the evidence tending to show that the policy had been declared forfeited long prior to August 13, 1890; and confine our attention to acts done and performed more than 90 days after the death of the assured. The letter of March 2, 1891, heretofore quoted, contained an explicit statement, as we feel bound to construe it, that the company refused to pay the claim, and rested its refusal on the ground that the assured had waived the benefit of the Missouri statute; that the policy, in view of such waiver, had been lawfully forfeited; and that, if the supreme court of the United States decided to the contrary of such contention, the decision would be conclusive of the liability of the company on the Hiett policy. It is due to the attorneys by whom that letter was written to say that in making such statements they merely repeated what had already been said by the company's St. Louis manager to the plaintiff's attorneys in a letter written on January 20, 1891; and from that time forward until July 2, 1891, it seems obvious that the correspondence was carried on by the respective parties on the theory outlined in both of said letters,—that the sole point in controversy was whether the state statute could be waived, and that the decision of the United States supreme court on that point in the pending case would be conclusive of the insurer's liability or nonliability. We accordingly conclude that, in view of the statements contained in said letters, the circumstances under which they were written, and the attitude of the parties during the long period covered by the correspondence, the jury had an undoubted right to infer and to find that the defendant company intended to abandon every other defense but the one founded on the alleged waiver of the Missouri statute, and, in any event, to abandon the defense now sought to be interposed. It is insisted, however, that the conduct of the company to which we have last alluded was no evidence of a waiver of the provision with respect to notice and proofs of loss, because it was not shown on the trial that the company had knowledge of the precise date of Hiett's death until July 3, 1891. The company certainly had knowledge long prior to that time that the condition of the policy with respect to notice and proofs had not been complied with. It had been informed as early as December 19, 1890, that the assured had died some time previous to that date, and no proofs were thereafter submitted until July 10,

1891. But a more conclusive answer to the foregoing suggestion is this: It was the province of the jury to find when the company first learned of the date of Hiett's death; and in determining what was the intention of the defendant company, and upon what defense it really intended to rely during the period covered by the correspondence, it was also the province of the jury to say what weight it would attach to the single circumstance that the company may not have known the precise date of Hiett's death during a portion of that period. The negotiations that were in progress for more than six months, and the conduct and acts of the company during that period, constituted some evidence of a waiver which the jury was clearly entitled to consider.

But the testimony introduced with a view of establishing a waiver of the condition with respect to notice and proofs of loss did not relate exclusively to the conduct of the company after the death of the assured, but to its prior conduct as well; and at this point we turn to consider what weight, if any, should be accorded to the circumstance that the company had actually declared the policy forfeited, and no longer in force, long prior to the death of the assured.

It is a well-established doctrine, as we have heretofore shown, that if an insurance company refuses to pay a loss, after it has occurred, because of an alleged breach of any of the substantive conditions of the policy, it thereby waives the necessity of furnishing notice and proofs of loss except on the trial. And this doctrine rests upon the ground that such conduct of the insurer is tantamount to a statement that preliminary proofs of loss are not desired, and upon the ground that the law will not require the assured to do an utterly useless act. It cannot well be supposed or assumed that an insurance company desires preliminary notice and proofs of loss under a given policy, except on the assumption that it is a subsisting obligation, and that such notice and proofs will be of some service in enabling it to make a timely examination of the circumstances attending the loss. Where the insurer has declared the contract at an end for an alleged breach of its conditions long prior to the occurrence of a loss, and in the mean time has done no act recognizing its validity, such action, in our judgment, should have the same effect in absolving the assured from his obligation to furnish notice and preliminary proofs that is given to a refusal to pay a loss after it has occurred because of an alleged breach of some of the substantive provisions of the contract. Looking at the reasons on which the rule is founded, we cannot say that a statement after a loss that a policy has been forfeited, and a refusal to pay on that ground, should have any other or different effect on the right of the insurer to insist upon notice and preliminary proofs, than a formal declaration of a forfeiture before a loss has occurred. In either event it is a fair inference from the conduct of the insurer that notice and preliminary proofs are not desired, and that the preparation and submission of such papers would be a useless ceremony. These views, we think, find abundant support in the adjudged cases. In Girard Life Ins. Co. v. Mutual Life Ins. Co., 97 Pa. St. 15, 24, 25,

a policy had been declared forfeited for nonpayment of an annual premium, some time before the death of the assured. In an action to recover the amount of such policy the company resisted payment, among other grounds, upon the plea that no notice or proofs of loss had been furnished as required by the policy. With reference to that defense, Mr. Justice Paxson, in behalf of the court, uses the following language:

"The proofs referred to were not essential. The plaintiffs had proved the death of Mr. Magarge. Further they were not bound to go. The defendant company denied all liability under the policy. They had declared it forfeited months before the death of the assured. Their position was that as to the assured there was no policy. It was precisely as if they had denied ever having issued one. How, then, could they call upon the representatives of the assured to furnish proofs of death under the policy?"

In the case of McComas v. Insurance Co., 56 Mo. 573, it was held that in a suit on a policy of life insurance, where the company in its defense denies all responsibility, and refuses to pay anything, such defense amounts to a waiver of notice and proofs of death. To the same effect, in substance, are the decisions in Norwich & N. Y. Transp. Co. v. Western Massachusetts Ins. Co., 34 Conn. 570, and Insurance Co. v. Coates, 14 Md. 285.

We must accordingly conclude that the circuit court properly admitted the proof that the defendant company had declared its purpose to forfeit this policy for nonpayment of the premium prior to April 5, 1889, that such purpose was in fact carried into effect shortly thereafter, and that it was subsequently treated by the company as a lapsed policy. This testimony was not only competent to establish a waiver of the provision with respect to notice and proofs of loss, but we think that it also tended to raise a technical estoppel against the company, when taken in connection with the administrator's testimony, which tended to show that he was led to believe that the policy was no longer in force by finding a notice of the intended forfeiture among the assured's papers. It will not do to assert that the parties to this controversy had equal information as to their respective rights when the loss occurred and for 90 days thereafter, or that they stood during that period on a plane of perfect equality. The defendant company knew as early as August 15, 1884, when the Clements suit was instituted, that the power to declare a forfeiture of the policy, which it had assumed to exercise, was at least doubtful under the Missouri statute; that the power had been denied, and that the question was then in litigation. Hiett's administrator had no such information. Under these circumstances the company should not be heard to insist that the administrator ought to have known that the policy was in force on August 13, 1890, and to have acted accordingly, when it appears that by its own previous act in asserting a right and intention to forfeit it it had misled the administrator to his prejudice by inducing him to believe that it had lawfully exercised the power of forfeiture months before the assured's death.

The result is that the record before us fails to disclose any material error in the proceedings of the circuit court, and the judgment of that court is therefore affirmed.