## O'BOYLE v. NORTHWESTERN FIRE & MARINE INS. CO. et al.
### No. 345.

Circuit Court of Appeals, Second Circuit.

May 11, 1931.

The scow Maybrook, owned by the plaintiff, with a deck load of about 540 yards of mixed sand and gravel consigned to the Sicilian Asphalt Paving Company, was towed to the dock of that company in Newtown creek and there securely made fast late in the afternoon of August 13, 1928. She had been loaded by the Rosoff Sand & Gravel Corporation at Marlboro on August 11th, and had, during the intervening time, made the trip from that point to her destination without mishap. She was built in 1916, was 114 feet long, 32 feet wide, and properly constructed for the work she was put to do. She had a bargee aboard who saw to her being made fast and who later eased off her lines to allow for the falling tide.

Between 2 and 3 o'clock on the morning of August 14th, her captain was awakened by a crash, and for a few seconds immediately afterwards heard what he thought sounded like a tugboat alongside pumping. He went out on deck toward the stern but saw no tug or other boat and started to walk over the load to the bow. The load was then well trimmed and the stern appeared to be afloat. When he reached the bow, that seemed to be aground. He testified that, while he was standing on the deck at the bow, the scow twisted and rolled both ways; then her decks blew in, and she sank at once, throwing him into the water. He swam ashore and reported to his owner as soon as the latter's office was open that morning.

The Maybrook was covered by a marine insurance policy issued by the defendant and in force at the time. This policy is in suit. The Sicilian Asphalt Paving Company was impleaded by the original defendant and obtained a verdict and judgment in its favor, from which no appeal has been taken.

It is not claimed by the defendant that the loss does not fall within the general provisions of its policy, but it does claim nonliability because the vessel was unseaworthy and was overloaded; because a proof of loss was filed in which the cause of the loss or damage was falsely represented to have been ascertained and to have been due to collision with an unknown boat.

It appeared that, before the policy was issued, but while a binder was in force, an inspector for the insurance company had examined the Maybrook, found and reported certain defects due to lack of repair, and that these defects had been called to the attention of the agents for the owner on June 20, 1928, with a request that repairs be made. In a letter sent by the agents of the defendant to those of the owner on July 6, 1928, it was expressly stated that there should be no liability under the policy issued for loss or damage attributable to such defects. They were as noted: "Port side seventh plank below top log aft broken; fourth plank below top log broken forward end; bitt on port side forward end broken; chock on forward

rail broken; four knees on port side broken; stern and second plank below bumper log broken; 11 knees throughout center broken; deck in bad condition; planks are broken and leaking all over the deck." No repairs were made. The boat was used until she sank as above stated. The evidence as to her condition with respect to these claimed defects was conflicting, and so it was as to what effect they would have had if present. While all agreed that they would have had some effect, the evidence introduced by the plaintiff upheld its claim that most of the parts called broken merely had inconsequential checks or cracks; that the boat had 240 knees in all, and was so strongly built throughout that the defects mentioned could have had at most but a trifling effect.

The claim of the plaintiff in his proof of loss that the sinking was caused by collision with an unknown boat was not urged upon the trial. There was, however, sufficient evidence that he had reason to believe and did believe that to be the fact when he executed the proof of loss. Nor was there any evidence to support the allegation in the complaint that the vessel grounded on an uneven and hard bottom. On the contrary, it was amply proved that the bottom was soft. But it did appear that the bottom, though soft, lay in two cross slopes, so that, when she grounded, her starboard stern corner would be about eight feet lower than the port corner at her bow, while the port corner at her stern would be only about four feet lower than her starboard bow corner. The resulting straining and twisting when she took this kind of a bottom was claimed by the plaintiff to have caused her collapse.

It further appeared that, after the plaintiff's proof of loss was filed and before this suit was brought, the agent of the defendant on October 15, 1928, returned all proofs submitted in support of the claim with the statement that "we must respectfully decline liability for this loss inasmuch as it is a claim not covered by the terms of the policy." Among the provisions in the policy were the following:

"It is a condition precedent, however, to any liability under this policy, that the Assured establish that any claim, whether for general average charges, salvage expenses or loss, damage, detriment or hurt to said vessel, has been directly caused by a peril insured against as aforesaid, and that the Assured further establish that such general average charges, salvage expenses or loss, damage, detriment or hurt has not arisen from or been caused by, either directly or indirectly, any of the following or other excluded causes namely: incompetency of the master or insufficiency of the crew, or want of ordinary care in loading or unloading, stowing or broaching the cargo of the vessel; rottenness, inherent defects, or other unseaworthiness."

"The assured further agrees that it shall be a condition precedent to any right of action or suit under this policy that the Assured submit to the Insurers proofs of loss which shall show, (a) not only that the vessel was seaworthy, and that the Assured has used due diligence to prevent such loss or damage; (b) but also that the cause of the loss or damage has been ascertained and was accidental and occurred after this policy attached and during its term, and as a direct result of a peril for which these Insurers by the terms of this policy have agreed to indemnify the Assured; and (c) the amount of the sum claimed by the Assured, and that such amount has been ascertained in the manner as herein provided. No claim shall be payable hereunder until the expiration of thirty (30) days from the date of the submission of said proofs."

Some of the evidence as to the load was that it was average in size and well within the capacity of the boat. Some evidence was to the effect that the scow was overloaded.

William F. Purdy, of New York City (John E. Purdy and Edmund F. Lamb, both of New York City, of counsel), for appellant.

Foley & Martin, of New York City (William J. Martin, Harold R. Medina, and William F. McNulty, all of New York City, of counsel), for plaintiff-appellee.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellee Sicilian Asphalt Paving Co.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

With the evidence conflicting as above indicated, the denial of the defendant's motion, made at the close of all the evidence, to dismiss the complaint for lack of proof, was not erroneous. Treated, as it should be, as a motion for a directed verdict, it presents the question of whether a jury of reasonable and impartial men were justified in finding the facts as the evidence in favor of the plaintiff tended to show them to be in spite of the evidence to the contrary. Troxell v.

Delaware, L. & W. R. R. Co., 227 U. S. 434, 33 S. Ct. 274, 57 L. Ed. 586. There was evidence sufficient to support a verdict for either party, and upon elementary principles that is enough to withstand a motion for a directed verdict and quite enough to uphold the denial of such a motion when made one of the grounds of appeal.

 The proof of loss put the cause of the sinking of the Maybrook upon collision with an unknown vessel. Though the plaintiff reasonably believed that to be the truth when the proof was filed, it was not shown at the trial to have been the cause. The defendant denied all liability before suit was brought, and so waived any right to further particulars by way of proof of loss as a condition precedent to the accrual of this cause of action. Royal Ins. Co. v. Martin, 192 U. S. 149, 163, 24 S. Ct. 247, 48 L. Ed. 385. There is nothing to indicate that it was misled by anything contained in the proof of loss or that the plaintiff was not acting in good faith in making the statements in it. It now insists that the cause of damage was not "ascertained"; that the stated cause was false when the proof was filed and being so there can be no recovery. Courts, in giving effect to that provision in an insurance policy, have never treated the requirement for a proof of loss as a mere trap for the unwary. See Atlas Assur. Co. v. Hurst (C. C. A.) 11 F.(2d) 250, and cases there cited. Where the insurer has taken no action to its detriment in reliance upon any statement therein, the rule would be harsh indeed that worked a forfeiture of all insurance as the penalty for an honest mistake of fact. The law which governs here is that a substantial compliance with the terms of the policy relating to proof of loss is sufficient. American Merchant Marine Ins. Co. v. Ford Corporation (C. C. A.) 269 F. 768; Globe & Rutgers Ins. Co. v. Prairie Oil & Gas Co. (C. C. A.) 248 F. 452. See, also, Glazer v. Home Ins. Co., 113 App. Div. 235, 98 N. Y. S. 979; Lloyd v. North British & Mercantile Ins. Co. of London & Edinburgh, 174 App. Div. 371, 161 N. Y. S. 271.

 The court at first charged that the burden to show unseaworthiness was upon the defendant, having in mind, no doubt, such cases as American Merchant Marine Ins. Co. v. Ford Corporation, supra; Fireman's Fund Ins. Co. v. Globe Nav. Co. (C. C. A.) 236 F. 618; American M. M. Ins. Co. v. Liberty Sand & Gravel Co. (C. C. A.) 282 F. 514. To this the defendant was allowed an exception which has been argued. It is true that the insurance policy here sued upon placed the burden upon the plaintiff to prove that the loss was not caused by unseaworthiness. After the charge excepted to was delivered, however, and before the jury had finished its deliberations, it returned to the courtroom for further instructions. At that time, the court called the attention of the jury directly to the provisions of the policy, and charged, according to the printed record: "Under that contract it would be the duty of the plaintiff to prove that the loss was (not) caused through incompetency or other unseaworthiness." To this the plaintiff was allowed an exception. It is so plain from the context that the word "not," supplied in the above quotation in parenthesis, has been left out of the record through error that we shall treat the supplemental charge, just as it must have been given and understood by all at the time, as an instruction to the jury that the plaintiff was bound to prove that his loss was not caused by the unseaworthiness of the boat. In this way any previous error in that regard was cured, and the defendant now has nothing of which it can justly complain on that score.

 The court did comply with some of the defendant's specific requests to charge. Others were refused. A reading of the charge as a whole shows that the issues were accurately and fully presented to the jury and in as favorable a manner as the defendant was entitled to under the law. Of course the court was not required to adopt the phraseology of the requests. A few exceptions taken to the admission and exclusion of evidence are alluded to in the defendant's brief. Perhaps some of these rulings were not exactly in harmony with a strict application of the technical rules of evidence, but it is beyond reason to believe that the defendant was at all prejudiced by them.

Judgment affirmed.