## JOHN ALT FURNITURE CO. v. MARYLAND CASUALTY CO.*
### No. 10709.

Circuit Court of Appeals, Eighth Circuit.
Feb. 17, 1937.

Louis J. Portner, of St. Louis, Mo. (Ben Philipson, of St. Louis, Mo., on the brief), for appellant.

John S. Marsalek, of St. Louis, Mo. (Moser, Marsalek & Dearing, of St. Louis, Mo., on the brief), for appellee.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

The John Alt Furniture Company (hereinafter referred to as the assured) brought this action upon a public liability policy issued to it by the Maryland Casualty Company (hereinafter referred to as "the Maryland"). From a judgment for the Maryland, this appeal is taken.

The policy covered "loss from the liability imposed by law upon the assured for damages on account of bodily injuries * * * accidentally suffered * * * by any person or persons not employed by the assured, while within or upon the premises described * * * (and elsewhere, if caused in the course of their employment by employees of the assured engaged as such at said premises, but who are required in the discharge of their duties to be from time to time at other places). * * *" By the terms of the policy, the Maryland was required to defend against any claims or suits instituted against the assured on account of such injuries.

There was excluded from the coverage of the policy "any accident caused direct-

*Rehearing denied March 16, 1937.

ly or indirectly by any automobile vehicle or by any draught or driving animal or vehicle owned or used by the assured or by any employee of the assured in charge thereof, unless such accident shall occur upon the premises specifically described in Item IV(a) of the Schedule hereof [the premises occupied by the assured]. * * *" There was also excluded from coverage "any accident caused directly or indirectly by the consumption, use, instalation, removal, repair, change, or demonstration, elsewhere than at the premises specifically described in Item IV(a) of the Schedule hereof [the premises occupied by the assured], of any goods, article, or product manufactured, handled, or distributed by the assured."

The policy contained the following provision relative to notice:

"(A). Immediate written notice of any accident, like notice of any claim and like notice of any suit resulting therefrom, with every summons or other process, must be forwarded to the home office of the company, or to its authorized agent; provided, however, that the failure to give such immediate notice shall not invalidate any claim made by the assured, if it shall be shown not to have been reasonably possible to give such notice immediately and that notice was given as soon as was reasonably possible."

On May 8, 1933, while the policy was in force, three of the assured's employees, in the course of their duties, were engaged in delivering furniture which the assured had sold to one of its customers living on the second floor of an apartment building at 4457 Lee avenue, St. Louis. The furniture was transported to the premises in a truck of the assured driven by one of its employees. In carrying this furniture from the truck to the second floor apartment, these employees removed a door from the rear of the building, which door they leaned against a clothes pole in the back yard of the premises. The door fell, striking and injuring a Mrs. Lola Olson, who was a tenant of one of the first floor apartments.

At the time this accident occurred, the assured had a policy of automobile liability insurance in the St. Paul Mercury Indemnity Company. The Maryland policy in suit and the Mercury policy had been procured by the assured through a Mr. Hampe, an insurance broker of St. Louis.

On the morning after the accident, the assured reported it to Mr. Hampe's office. One of the employees of that office, Amanda Christ, who was in doubt as to which of the policies covered the accident, apparently called the claim department of the local office of the Maryland by telephone, and was advised by some unidentified person that the Maryland policy did not cover such an accident. She then reported the accident to the St. Paul Mercury Indemnity Company, which denied liability, but agreed to defend, under a nonwaiver agreement, any suit which might be brought by Mrs. Olson. Mrs. Olson commenced suit against the assured on June 22, 1933.

On February 21, 1934, more than two months before the trial of the Olson suit, Mr. Hampe wrote the following letter to the Maryland:

"February 21st, 1934.
"Claim Department, Maryland Casualty Co., Pierce Building, St. Louis, Missouri.
"Gentlemen:
"Re: Policy LF 150802—John Alt Furniture Co.
"Lola Olson—Claimant—Date of Accident 5/8/33.

"I wish to report an accident under the above policy which occurred on May 8th, 1933. The assured was delivering furniture at 4457 Lee Avenue. In order to get the furniture into the flat it was necessary to remove the rear door of the flat and after the door was removed it was taken into the rear yard and placed against a clothes pole next to the fence. The door had been in this position about half hour to an hour while the assured's employees were taking furniture into the flat, when the wind apparently blew the door over and in falling the top of the door struck Lola Olson, a tenant in this flat who was walking around in the back yard assisting a small child to walk.

"The injuries at first did not appear to be serious but later the injured was taken to the Christian Hospital and rather serious injuries were claimed.

"This accident was reported to me by the assured immediately after it occurred and I reported it to the St. Paul Mercury Indemnity Company who carry the truck policy as I thought that was the policy which would cover this accident. The St. Paul Mercury Indemnity Company denied

liability but later under stipulation agreed to handle the investigation and defense of the suit without waiving any rights. Jesse L. Renderer of the Thomas English Adjusting Company has been handling the suit and if you desire further information, you may take the matter up with him.

"After thorough consideration of this matter and I am inclined to believe that your policy is the one which covers this accident so I wish you would give the matter the necessary attention and advise me on same.

"Very truly yours.

"[Signed] Otto A. Hampe."

In response to this letter, on March 8, 1934, the Maryland wrote the assured as follows:

"Gentlemen: On February 21st, 1934 Mr. Otto A. Hampe reported, to us an accident that occurred on May 8th, 1933. He stated that your Company was delivering furniture to 4457 Lee Avenue and in order to get the furniture into the flat it was necessary to remove the rear door, and that the man in charge took this door into the rear yard placing it against a clothes pole next to the fence. The door was in this position about a half an hour when the wind blew same down and it struck the claimant, Lola Olson.

"We regret very much that it is necessary to call your attention to the exclusions under your policy, Part VII, Paragraph 6, which states:

" 'Any accident caused directly or indirectly by any automobile vehicle or by any draught or driving animal or vehicle owned or used by the Assured or by any employee of the Assured in charge thereof, unless such accident shall occur upon the premises specifically described in Item IV(a) of the Schedule hereof or on the public ways immediately adjacent thereto.'

"Feeling sure that you understand our position in the matter, we are,

"Very truly yours,

"St. Louis Claim Division

"Per

"[Signed] W. S. Atchison

"W. S. Atchison, Mgr."

On or about April 30, 1934, the Olson suit was tried. The assured was defended by the St. Paul Mercury. The result of the trial was a judgment in favor of Mrs. Olson and against the assured for $7,500.

After the assured had paid this judgment, it brought this action against the Maryland for reimbursement.

The defenses asserted by the Maryland in its answer were: (1) Failure of the assured to notify the Maryland of the accident and of the Olson suit, as provided by the policy. (2) Failure to forward to the Maryland the petition and summons in the Olson suit. (3) That the accident which resulted in the injury to Mrs. Olson was not within the coverage of the policy.

In its reply, the assured asserted: (1) That it had given notice to the insurance broker who procured the policy for it, in accordance with a custom prevailing in St. Louis whereby notice to such a broker is to be taken as written notice to the insurer. (2) Waiver of notice by the Maryland because of its denial of liability.

The court below, at the close of the evidence, directed a verdict for the Maryland on the ground of the noncompliance by the assured with the conditions of the policy requiring notice of accident and notice of suit and the forwarding to the Maryland of every summons and other process in such suit. From the judgment entered upon the verdict, the assured has appealed.

 The assignment of errors, in so far as it relates to rulings upon the evidence, does not comply with rule 23 of this court, which provides: "* * * When the error alleged is to the admission or to the rejection of evidence, the assignment of errors shall quote the full evidence so admitted or rejected and the objections, exceptions and rulings thereon. * * *"

Therefore, the only alleged error properly assigned is that the court erred in directing a verdict in favor of the Maryland.

Two questions are properly presented for review:

(1) Did this policy cover the loss occasioned by the accident to Mrs. Olson?

(2) If so, did the letter of March 8, 1934, constitute a waiver by the Maryland of the assured's failure to give notice of the accident and notice of the suit, and to forward to the Maryland the petition and summons in the Olson suit?

So far as the question of coverage is concerned, it is clear that this policy did cover the accident which resulted in the injuries to Mrs. Olson. It was an accident caused in the course of their employment by employees of the assured engaged as such at the place of business of the assured, but who were required in the discharge of their duties to be from time to time at other places. The accident does not fall within the exceptions of the policy which are relied upon by the Maryland. It was caused by no vehicle or animal owned or used by either the assured or any of its employees. If it had been caused by the delivery truck, the loss would have been covered by the Mercury policy. It was not an accident caused by installation of goods and merchandise by the assured, but an accident resulting from an ordinary delivery in the usual course of business, to a customer, of goods sold.

As to the question of waiver. Upon the trial the assured offered to prove that Amanda Christ, acting for the assured, on the morning after the accident notified the claim department of the Maryland of the accident, and that an unidentified person informed her over the telephone that the Maryland policy did not cover the loss. This offer of proof was objected to and excluded by the court. Therefore, under the evidence admitted, it appears that on March 8, 1934, the assured had not complied with the policy provisions as to notice and the forwarding of summons, and was in default in that regard. The Maryland contends that, under the circumstances established by the evidence, its letter of March 8th did not constitute a denial of liability nor a waiver of the assured's default.

The letter of March 8th was the full equivalent of a statement by the Maryland to the assured that this policy did not cover the accident to Mrs. Olson and a denial of liability on that ground. Phenix Ins. Co. v. Kerr (C.C.A. 8) 129 F. 723, 728, 66 L.R.A. 569. If that was not what the letter meant, there was no point in writing it.

The question, then, is whether this denial of liability by the Maryland constituted a waiver of the assured's failure to give notice and to forward process. Had the assured been able to show, as it attempted to do, that on the day after the accident the Maryland had denied liability on the ground that the policy did not cover the accident, this denial on its part would have constituted a waiver of the conditions of the policy requiring notice and the forwarding of process in the Olson suit. Tayloe v. Merchants' Fire Ins. Co., 9 How. 390, 403, 13 L.Ed. 187; Knickerbocker Life Insurance Co. v. Pendleton, 112 U.S. 696, 709, 5 S.Ct. 314, 28 L.Ed. 866; Royal Insurance Co. v. Martin, 192 U.S. 149, 162, 163, 24 S.Ct. 247, 48 L.Ed. 385; Phenix Ins. Co. v. Kerr (C.C.A. 8) 129 F. 723, 728, 66 L.R.A. 569; Continental Ins. Co. v. Fortner (C.C.A. 6) 25 F.(2d) 398, 402; Carson v. Home Fire & Marine Ins. Co. (C.C.A. 5) 39 F.(2d) 50, 52; O'Boyle v. Northwestern Fire & Marine Ins. Co. (C.C.A. 2) 49 F.(2d) 713, 716; Security Ins. Co. v. Dazey (C.C.A. 7) 78 F.(2d) 537, 540.

The authorities are in accord that such a denial of liability at a time when an insured still has the right to furnish notice and proofs of loss dispenses with the necessity of such notice and proofs.

The question, then, is whether such a denial of liability after default of an assured in the giving of notice and the furnishing of proofs constitutes a waiver by the insurer of its right to defend because of such default.

The applicable rule in this Circuit was announced by Judge Thayer in Equitable Life Assur. Soc. v. Winning (C.C.A. 8) 58 F. 541, 546, 547, as follows:

"It is invariably held that a refusal by an insurer to pay a claim, after a loss has occurred, because of a breach of any of the substantive provisions of the policy, or because the policy was not in force, or because the loss occurred in consequence of a risk not covered by the policy, is in itself a waiver of the provision requiring notice and proofs of loss to be submitted within a specified number of days after the loss occurs. The cases to this effect are almost too numerous for citation, and only a few will be referred to. Tayloe v. Insurance Co., 9 How. [390] 391, 396, 397 [13 L.Ed. 187]; Norwich & N. Y. Transp. Co. v. Western Massachusetts Ins. Co., 34 Conn. 561, 570 [Fed.Cas. No. 10,363], and citations; Thwing v. Insurance Co., 111 Mass. 93, 110. In some of the more recent cases it has also been ruled that the provision in question may be waived by acts done by the insurer after the time has expired within which no-

tice and proofs are required to be submitted, and that no new consideration is necessary to support a waiver of that character. In the case of Prentice v. Insurance Co., 77 N.Y. 483, 489 [33 Am. Rep. 651], where the policy required notice of death to be forthwith given and full proofs to be submitted within twelve months, and no notice or proofs were submitted for more than two years after the death occurred, Andrews, J., said, in affirming the judgment against the insurer:

" 'It is now understood to be the doctrine of this court that no new consideration is required to support a waiver by an insurance company of a condition in respect to the time of serving proofs of loss, and that it may be done by acts or conduct occurring subsequently to the breach of the condition indicating an intention to waive such condition, although there is no new consideration, and although there may be no technical estoppel.'

"The same remark was repeated by Church, C. J., in Brink v. Insurance Co., 80 N.Y. 108, 112, and it was further said that—

" 'The filing of proofs of loss by a specified time is a condition made for the benefit of the company, which it may avail itself of or not; and if it determine to waive it, it cannot afterwards recall the waiver, and insist upon the forfeiture.'

"In the case of Goodwin v. Insurance Co., 73 N.Y. 480, 496, the court of appeals of that state further declared that—

" 'When an insurance company, by means of its officers or agents, in response to a claim for a loss, fails to say anything about the time of presenting the proofs after it has expired, but claims some other defense, the presumption is that it does not intend to interpose any other besides that named, and it is a fair inference to be derived from the fact that it was silent on the subject, that it designed to waive the violation of such condition.'

"We find nothing in other decisions from that state to which we have been referred (to wit, Devens v. Insurance Co., 83 N.Y. 168, and Armstrong v. Insurance Co., 130 N.Y. 560, 29 N.E. 991) which works any sensible modification of the law of waiver in its application to such provisions of insurance policies as are now under consideration. It seems to be the well-settled doctrine in that state, as it is elsewhere, that an insurance company must promptly disclose its purpose, if it intends to rest its defense to a claim for insurance on the technical ground that notice and proofs of death were not submitted within the time specified in its policy. If it treats with the assured on other grounds, and asserts that the policy has become forfeited, or that other substantive conditions of the contract have been broken, it must assume the risk of having its conduct in that behalf construed as a voluntary abandonment of other less meritorious defenses."

This rule, while it was apparently departed from in Callen v. Massachusetts Protective Ass'n (C.C.A. 8) 24 F.(2d) 694, 696, has never been expressly or intentionally modified or overruled and was followed by this court in American Automobile Ins. Co. v. Castle, Roper & Mathews, 48 F.(2d) 523 (certiorari denied 284 U.S. 624, 52 S.Ct. 10, 76 L.Ed. 532), and by the Circuit Court of Appeals of the Tenth Circuit in Penn Mutual Life Ins. Co. v. Tilton, 84 F.(2d) 10, 13.

In some jurisdictions a different rule prevails and it is held that after an assured is in default for failure to give the notice and to furnish the proofs of loss required by the policy, a denial of liability by the insurer on other grounds does not waive the default. See Note in 22 A.L.R. 407; Maryland Casualty Co. v. Nellis (C.C.A. 6) 75 F.(2d) 23, 25; J. T. Knight & Son v. Superior Fire Ins. Co. (C.C.A. 5) 80 F.(2d) 311, 313. Courts so holding ordinarily do so upon the theory that there can be no waiver without an estoppel; that after default of an insured in giving notice and furnishing proofs, he is not misled or prejudiced by the denial of liability by the insurer. While this court has expressed the view in some cases that the basis of waiver is estoppel—Equitable Life Assur. Soc. v. McElroy, 83 F. 631, 638; Williams v. Neely, 134 F. 1, 10, 69 L.R.A. 232; G. Amsinck & Co. v. Springfield Grocer Co., 7 F.(2d) 855, 860—yet in other cases it has recognized the distinction between waiver and estoppel which has come to be generally accepted. Thus in Missouri, K. & T. Trust Co. v. German Nat. Bank (C.C.A.) 77 F. 117, 121, it was said:

"It is now well settled by the decided weight of authority that an insurance company may waive a forfeiture or a defense to an action on an insurance policy, by acts in pais from which an intention to waive may be inferred, and that

**41**

such a waiver need not be based on a new consideration, or amount to a technical estoppel."

See, also, Orr v. Mutual Life Ins. Co. (C.C.A. 8) 64 F.(2d) 561.

We quote the following statement from Vance on Insurance (2d Ed.) page 451, as to the distinction between waiver and estoppel, with which we are in accord:

"The terms 'waiver' and 'estoppel' as used in insurance law, are frequently treated as synonymous, and as denoting similar concepts, or, in some instances, complementary concepts. In fact, however, the two concepts are notably distinct, and in the more carefully reasoned judicial decisions, this distinction is clearly recognized.

"Waiver is usually defined as the intentional relinquishment of a known right, but it may be more narrowly and accurately defined as the intended giving up of a known privilege or power. It may be express, or implied from circumstances. It always involves consent, express or implied, but does not necessarily rise to the level of contract.

"An equitable estoppel in the broadest sense arises when the insurer or the insured has brought about or allowed such conditions as make it inequitable for him to claim a right to which he would otherwise be entitled. More specifically, if either party to an insurance contract makes, by word or act, a false representation of fact with reference to the contract upon which the other, acting in good faith reasonably relies to his prejudice, he will not be allowed to make any claim under the terms of the contract which is inconsistent with such representation.

"Waiver is thus seen to be conventional in its nature resting upon agreement, while estoppel is tortious in quality, being grounded on deceit, or, at least, upon conduct known, or which should be known, to be misleading. A waiver is recognized to give effect to the intention of the party waiving, while an estoppel is enforced to defeat the inequitable intent of the party estopped."

The rule established for this Circuit by the case of Equitable Life Assur. Soc. v. Winning (C.C.A.) 58 F. 541, was and still is the rule in New York, so far as we are advised. Goodwin v. Massachusetts Mut. Life Ins. Co., 73 N.Y. 480, 493;

Prentice v. Knickerbocker Life Ins. Co., 77 N.Y. 483, 488, 489, 33 Am.Rep. 651; Brink v. Hanover Fire Ins. Co., 80 N.Y. 108, 112; Wachtel v. Equitable Life Assur. Soc., 266 N.Y. 345, 194 N.E. 850.

We adhere to the rule. Applying it to the facts in this case, we hold that the Maryland, by denying liability on the ground that its policy did not cover the accident which caused the loss to its assured, abandoned its defense of lack of notice and failure to forward process.

While the conclusion which we have reached makes it unnecessary to consider other questions presented by the briefs, there was one plain error committed by the trial court which, though not properly assigned, should be pointed out to avoid a recurrence. The proffered testimony of Amanda Christ to the effect that on the day following the accident she reported it by telephone to some unidentified person in the Claim Department of the Maryland who stated to her that the Maryland policy did not cover the accident, was clearly admissible under a well-recognized exception to the general rule requiring that the identity of a speaker over the telephone shall be established. We quote from 22 C.J. 193, 194:

"The rule requiring the identity of the speaker to be established is subject to a well recognized exception to the effect that, where the witness called the office of a party on the telephone, testimony as to a conversation had with a person answering the telephone and purporting to do so on behalf of the party is competent, although the witness did not recognize the voice of the person who spoke and is unable to identify the speaker, for the reason that one who answers a telephone call from the place of business of the person called for, and undertakes to respond as his agent, is presumed to have authority to speak for him in respect to the general business there carried on and conducted."

A leading case to the same effect is Wolfe v. Missouri Pac. R. Co., 97 Mo. 473, 481, 11 S.W. 49, 3 L.R.A. 539, 10 Am.St.Rep. 331. This court is in accord. New York Life Ins. Co. v. Silverstein, 53 F.(2d) 986, 988. Other cases will be found in the note on page 194 of 22 C.J.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.