James THOMAS et al., Plaintiffs,

v.

Theodore OTIS, Nationwide Mutual Insurance Co., Garnishee.

Civ. A. No. 5413–54.

United States District Court
District of Columbia.

Nov. 7, 1961.

Lawrence C. Moore, Washington, D. C., for plaintiffs.

William T. Clague, Swingle & Swingle, Washington, D. C., for garnishee.

YOUNGDAHL, District Judge.

The basis of this suit is a prior action for personal injuries arising out of an automobile accident that occurred in September, 1954. In that action defendant, Theodore Otis, was found liable to plaintiffs in the sum of $3,500. On alternative motion for judgment N.O.V. or new trial, this amount was reduced to $1,750. The modified judgment was subsequently affirmed by the Court of Appeals for the

District of Columbia. Thomas v. Otis, 104 U.S.App.D.C. 343, 262 F.2d 232 (1958).

At the time of the accident there existed a valid and subsisting automobile liability policy whereby Nationwide Mutual Insurance Co. had insured the defendant. Consequently, on April 21, 1959, there was served on Nationwide, garnishee in the present suit, a writ of attachment on the outstanding judgment against Otis.

The immediate suit arises out of a claim by Nationwide of non-liability to the plaintiffs due to the failure of Otis to comply with the terms of the policy. Nationwide asserts that under the policy [1] defendant Otis was required to cooperate and assist in the defense of the suit; but Otis failed to do so by failing to attend the trial, failing to keep Nationwide advised of his changes of address, and failing to assist in securing and giving evidence.

Attorneys for Nationwide undertook a vigorous defense of the original personal injury suit against Otis from the inception of that action late in 1954. However, the evidence adduced in the present action against Nationwide, as garnishee, showed conclusively a complete lack of cooperation by Otis in the defense of that suit.

The primary obstacle confronting Nationwide was to locate and maintain contact with Otis for the purpose of obtaining evidence from him and having him appear at trial. Approximately four or five different addresses for Otis were received by Nationwide through various sources. He was finally located in August, 1955, in New York City. A letter was addressed to Otis at that address, with copies to several of his other addresses, advising him of the filing of suit; that his full cooperation was requested; and that he should advise Nationwide of any subsequent change of address.

Without reiterating all of the testimony, from that time on, Nationwide endeavored, with little or no success, to maintain contact with Otis through a series of airmail letters, registered letters, and telephone calls. At one point it was necessary to hire an investigator at a cost of $200 to locate Otis. He was then paid $50 expenses to appear in Washington in May, 1957, for trial. At that time Otis did appear but the matter was continued due to certain confusion as to the court's jurisdiction over defendant. Otis promised to appear for trial when the case was again called and to keep Nationwide informed of any further change of address in the meantime. This he did not do. On the next trial date, Nationwide asked the Court for another continuance in order to locate defendant, or, in the alternative, to be allowed to withdraw from the defense. A further continuance was granted. Subsequent efforts to locate Otis for trial failed.

The case was finally tried the last day of October, 1957, with Nationwide again requesting the Court's permission to withdraw as counsel for the defense due to Otis's lack of cooperation. This was denied.[2] After judgment for plaintiffs, Nationwide moved for a new trial. This motion was denied, but, as previously mentioned, the original judgment was reduced to $1,750. Subsequently, and without any direction from the Court, Nationwide appealed that judgment on the merits. At no time did it indicate that it considered this appeal to be under

---

1. The relative portion of which reads as follows:

"16. *Assistance and Cooperation of the Insured.* (Coverages A, B, C, D–1, D–2, E and F)

"The Insured shall cooperate with the Company and, upon the Company's request shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits * * *."

2. It is clear that by defending the action against Otis under order of court and arguing the motion for new trial, Nationwide did not waive its defense of non-cooperation against the insured. The defense under such circumstances is compulsory. See Pennsylvania Casualty Co. v. Miller, 145 F.2d 292 (7th Cir.1944).

the original order of the trial court to enter a defense for Otis. The Court of Appeals affirmed the lower court's decision. Nationwide then brought this suit claiming non-liability based on the lack of cooperation by Otis.

There are two questions presented for the Court's consideration:

First, did Otis's failure to keep Nationwide advised of his whereabouts and to appear at trial in order to give evidence violate the "cooperation" clause of his policy and thereby relieve Nationwide of any liability?

Second, assuming, *arguendo*, that Nationwide was relieved of liability by Otis's lack of cooperation, did it waive this defense by voluntarily appealing on the merits?

## Discussion

(1) Plaintiffs may only recover from Nationwide, the garnishee, if Otis can recover from Nationwide, as they— the plaintiffs—stand in the shoes of the policyholder and enjoy no better rights than he does. Rushing v. Commercial Cas. Ins. Co., 251 N.Y. 302, 167 N.E. 450 (1929). It is apparent that the clause in Nationwide's policy with Otis requiring the cooperation of the defendant in the defense of the suit is of great importance to the insurer, for without that, the insurer may be tremendously handicapped, even to the extent of making the action incapable of defense. As such a clause is a material condition of the policy, its violation in a substantial manner so as to be prejudicial in effect to the insurer, relieves the latter of all liability. State Auto. Mut. Ins. Co. of Columbus, Ohio v. York, 104 F.2d 730 (4th Cir. 1939); 139 A.L.R. 780 (1942).

In the instant case Otis was the driver of one of the cars involved in the collision. From the extended efforts made by Nationwide to obtain his cooperation, and for purposes to which it was entitled to have such cooperation, it is clear that it considered Otis a vital link to an effective defense. That the presence and testimony at trial of Otis, a participant in the accident, was vital, and that

the deprivation of his presence was prejudicial, is evident. The failure of an insured to furnish the insurer his new address, where reasonable diligence to locate him has been used, and the voluntary disappearance of the insured and his consequent failure to attend trial, have been held to release the insurer of its obligations under the policy. Polito v. Galluzzo, 337 Mass. 360, 149 N.E.2d 375 (1958); Associated Indemnity Corp. v. Davis, 45 F.Supp. 118 (M.D.Pa.1942); Hoff v. St. Paul-Mercury Indemnity Co., 74 F.2d 689 (2d Cir. 1935). The total contempt of Otis for his insurer's rights can only indicate that his non-cooperation was indeed willful and avowed. Therefore, there is no doubt in the Court's mind that at the completion of trial Nationwide was not liable on the judgment rendered against Otis.

(2) There is a further problem, however, due to the fact that without "reserving" any rights to this defense, Nationwide chose to appeal that judgment on the merits. Nationwide contends that this action does not amount to a waiver and that "counsel did only what the order of the court required, i. e., they continued in the defense." The insured relies on the case of Beam v. State Farm Mutual Ins. Co., 269 F.2d 151 (6th Cir. 1959); however, that reliance is misplaced, for that case did not involve the issue in this case —the voluntary appeal of a lower court decision without reservation of rights. Closer in point is the case of Pennsylvania Casualty Co. v. Miller, 145 F.2d 292 (7th Cir. 1944), where the insurer not only defended the action (under compulsion of court), but also argued a motion for new trial. Had Nationwide gone as far as the insurer in that case, and no further, the Court would hold that waiver was not applicable.

The insurer may or may not, at its option, take advantage of the breach. Having once determined that the insured has breached his contract, as Nationwide did in this case prior to trial, it must adopt and maintain a posture consistent with that position. Nationwide, to the contrary, with knowledge of Otis's

**4**

breach, undertook an appeal—which was clearly not contemplated in the trial court's order—and thereby acknowledged by its conduct that it did not choose to hold Otis to the consequences of his actions. This is a clear instance of waiver, which is defined as the "intentional relinquishment of a known right." C. I. T. Corp. v. Carl, 66 App.D.C. 232, 234, 85 F.2d 809, 811 (1936). See 45 C.J.S. Insurance § 673 (1946); 8 Couch, Insurance Law § 2150 (1931). Waiver, unlike estoppel, does not require any action by the insured to his detriment in reliance upon a position taken by the insurer. Therefore, even though Otis was not placed in any worse position by Nationwide's appeal, this does not change the fact that Nationwide waived its right to claim non-cooperation. See John Alt Furniture Co. v. Maryland Casualty Co., 88 F.2d 36, 40 (8th Cir. 1937); 45 C.J.S. Insurance § 673 (1946).

Therefore, plaintiffs are to recover judgment from the garnishee in the sum of $1,750, plus interest from November 1, 1957, until date of payment. This memorandum represents the Court's findings of fact and conclusions of law.