SEABOARD MACHINERY CORPO-
RATION, Plaintiff,

and

The United States of America,
Intervenor-Plaintiff,

v.

HANOVER FIRE INSURANCE COM-
PANY et al., Defendants.

SEABOARD MACHINERY CORPO-
RATION, Plaintiff,

and

The United States of America,
Intervenor-Plaintiff,

v.

AMERICAN EAGLE FIRE INSURANCE
COMPANY et al., Defendants.

Civ. A. Nos. 420, 421.

United States District Court
N. D. Florida,
Tallahassee Division.

March 15, 1957.

Caldwell, Parker, Foster & Wigginton, Tallahassee, Fla., for plaintiff.

Harrold Carswell, U. S. Atty., Tallahassee, Fla., for intervenor-plaintiff.

Ausley & Ausley, Tallahassee, Fla., for defendants.

DE VANE, Chief Judge.

These two cases originated in this Court on August 20, 1953, by plaintiff, Seaboard Machinery Corporation, bringing suits against certain insurance companies to recover damages for fire losses sustained on December 22, 1952, at the Wainwright Shipyard, Panama City, Florida, in which a large part of the buildings and contents under lease to plaintiff by General Services Administration was destroyed.

Prior to the filing of these suits, the United States of America declined to join Seaboard Machinery Corporation in bringing the suits and the United States was made an intervenor-plaintiff on motions of the several insurance companies, defendants in the cases.

After the United States became intervenor-plaintiff in the cases, the insurance companies settled the fire losses with plaintiff and intervenor-plaintiff, and there is now on deposit in the Registry of this Court the sum of $191,700 in Civil Action No. 420 and the sum of $598,600 in Civil Action No. 421. The insurance companies were thereupon dismissed with prejudice as parties to the litigation and the controversy has continued between plaintiff and intervenor-plaintiff as to how the proceeds should be divided between them.

The controversy arises out of a lease, option to purchase agreement, entered into on the 14th day of March, 1952, between the United States of America through its agent, General Services Administration, and plaintiff. The agreement required plaintiff to carry insurance in amounts to be fixed by intervenor-plaintiff upon all buildings and equipment covered by the agreement. The lease agreement was amended from time to time insofar as buildings and equipment were concerned, and the insurance coverage requirements were modified when necessary to meet these changes. The insurance coverage requirement in effect when the fire occurred was $732,000 for buildings and $200,000 for contents.

The intervenor-plaintiff claims the lion's share of all the money on deposit with this Court. It claims the sum of $164,620 in Civil Action No. 420 and $598,600 which is the full amount on deposit in Civil Action No. 421.

Intervenor-plaintiff contends that its share of the insurance money in the Registry of this Court is controlled exclusively by Article Twelve of the agreement between the parties. This Article Twelve is as follows:

"Article Twelve, Insurance:

During the term of this lease, including any renewal thereof, lessee shall furnish and maintain, at its own expense fire and extended coverage insurance, including coverage for Vandalism and Malicious Mischief, and Boiler and Machinery insurance, in such amounts, with such carriers and in such form as the lessor shall approve. Policies evidencing such insurance shall show the United States of America, acting by and through the Administrator, General Services Administration, only as the insured, and shall provide for payment, in the event of loss, to the Treasurer of the United States for the account of all interests. Policies shall further provide that the insurance companies agree to notify the Regional Director, General Services Administration, 303 Federal Annex, Atlanta, Georgia, thirty (30) days prior to any reduction in the amount or cancellation of the insurance."

364

Counsel for the parties are in agreement that Sections 631.04 and 631.05, Florida Statutes, F.S.A., places the State of Florida in the category of a "valued policy" state, and that following the fire the insurance companies became liable to the parties for the full amount of insurance coverage by reason of the fire.

The buildings destroyed by fire were valued in the insurance policies for insurance purposes at $598,300, plus blister damage to the workshop of $300, making a total of $598,600. The insurance coverage on the personal property was in the sum of $200,000, and the insurance companies paid into the Registry of this Court for fire losses on this property the sum of $191,700. The difference in the two latter figures is represented by the amount of premiums due on the several policies. Intervenor-plaintiff's claim of $164,620 for personal property also represents the full amount of insurance coverage placed upon the personal property of intervenor-plaintiff destroyed by the fire.

It is the position of plaintiff, Seaboard Machinery Corporation, that Article Twelve of the lease option agreement has no controlling effect whatever upon the question of the amount intervenor-plaintiff is entitled to recover in these cases. The court has previously held, and plaintiff concedes, that intervenor-plaintiff has a prior lien to plaintiff upon the funds on deposit in the Registry of this Court for the full amount it is entitled to recover in these cases. Plaintiff contends that the amount intervenor-plaintiff is entitled to recover is limited and controlled by the provisions of Articles Five, Six and Seven of the lease option agreement. Article Five of the agreement gives to plaintiff an option to purchase the property, and the evidence in the case shows that on August 14, 1952, plaintiff gave to the General Services Administration notice of the exercise by it of the option to purchase granted to it under said Article Five.

Article Six defines the "assumption of responsibility and liability" of plaintiff for the property leased and Article Seven provides for a "joint condition survey report and inventory of the property" upon termination of the agreement. These sections are the ones that specifically deal with the liability of plaintiff to intervenor-plaintiff for all property covered by the agreement. There is no doubt that had the insurance coverage defaulted for some reason before the fire, intervenor-plaintiff, under the provisions of Articles Six and Seven, could have recovered in full from plaintiff the losses sustained by it.

Counsel for intervenor-plaintiff relies heavily on the fact that Article Twelve of the agreement provided that the "insurance shall show the United States of America, acting by and through the Administrator, General Services Administration, *only* as the insured and shall provide for payment, in the event of loss, to the Treasurer of the United States for the account *of all interests*". (Emphasis supplied.) All insurance policies in fact named plaintiff and intervenor-plaintiff as beneficiaries, but in law it would have made no difference for the insurance money would have been received by the Treasurer of the United States "for the account of all interests". It necessarily follows from this language that had plaintiff not been named as a beneficiary in the policies, it would nevertheless have been entitled to assert its interests in the proceeds of insurance under Article Twelve of the agreement.

Counsel for intervenor-plaintiff also stresses the point that the insurance coverage for all the property destroyed by fire was only for the amount required by intervenor-plaintiff to be placed upon its property. The evidence in the case shows that plaintiff did considerable repair work on the buildings to place them in condition for use, installed considerable jigs and other fixtures, which became a part of the real estate, and also had in use and located on the premises and destroyed by the fire a considerable amount of personal property, none of which was covered by insurance other than that provided by the coverage required by intervenor-plaintiff.

Plaintiff attempted to introduce considerable additional testimony on this question, but the Court ruled it out as not being germane to the issue before the Court. Suffice it to say here upon this particular question that, (as will be fully set out later) the evidence in these cases clearly establishes the fact that the insurance requirements placed upon plaintiff by intervenor-plaintiff far exceeded the market value intervenor-plaintiff placed upon its leased property. Plaintiff was required to pay for all this insurance and since it was protected by the policies along with intervenor-plaintiff, it would have been a wasteful and useless expenditure of money for plaintiff to have carried any additional insurance.

The crux of these cases centers around the question as to the rights of the parties under the lease, option to purchase agreement. The evidence shows that plaintiff held an option to purchase the entire Wainwright Shipyard properties owned by intervenor-plaintiff prior to September 4, 1954, and while the terms of the lease were in effect. The price to be paid was to be determined by an appraisal made of the property by the intervenor-plaintiff's agent, General Services Administration, immediately following notice of the exercise of the option to purchase. Such notice was given by letter dated August 14, 1952, and in this letter plaintiff offered to pay $550,000 for the entire shipyard property. An appraisal was immediately made by the General Services Administration determining the fair market value of this property as of September 30, 1952, and on October 6, 1952, General Services Administration made a counter-offer to sell the property for the sum of $765,000. This offer carried with it the provision that the property would be sold subject to the National Security Clause and that the final agreement to be entered into between the parties would require the approval of the Secretary of Defense. The appraisal of the General Services Administration on which this offer was made placed an overall fair market value on the entire property of the Wainwright Shipyard, free of the National Security Clause, at $1,215,000, and subject to the National Security Clause at $765,000.

On December 22, 1952, following the interchange of the proposals set out above, a large part of the property under lease by plaintiff from intervenor-plaintiff was destroyed by fire and this catastrophe apparently brought about a lull to further negotiations between the parties with reference to purchase and sale of the property until August 21, 1953, when plaintiff notified intervenor-plaintiff that it accepted the offer of intervenor-plaintiff contained in its letter of October 6, 1952, and offered to purchase the entire Wainwright Shipyard for the amount stated in that offer. It will be noted that this letter was written one day after these suits were instituted.

On October 23, 1953, General Services Administration, acting for intervenor-plaintiff, notified plaintiff that it would not sell any part of the property to plaintiff, and out of this notice this battle royal began. In its letter of October 23, 1953, General Services Administration stated that on October 15, 1953, the Assistant Secretary of Defense, acting for the Secretary, notified it "that the Department of Defense cannot agree to the sale of this facility to Seaboard Machinery Corporation". The letter of the Assistant Secretary of Defense, referred to above, was not filed in evidence in these cases.

Intervenor-plaintiff's position in these cases is that it was legally entitled to repudiate the lease and option agreement between the parties as it has done and that it is legally entitled to recover all the insurance money on deposit in this Court, except the sum of $27,080, the amount by which its proof of loss for personal property failed to equal the total amount on deposit in this Court for said property.

Plaintiff's claim is that it is liable to intervenor-plaintiff under the lease

agreement for the full fair market value of all the property destroyed by the fire, and after paying the full value for said property that plaintiff is entitled to the balance of the money left in the Registry of this Court.

■ There can be no question but that under its lease and option to purchase agreement, plaintiff had an insurable interest in the property under lease as well as in the property it had installed on the leased premises. National Fire Insurance Company of Hartford v. Board of Public Instruction of Madison County, Florida, and C. J. Thomas, 5 Cir., 239 F.2d 370.

The only important legal difference in these cases and the case just cited is that there the parties stood by their agreements and the insurance company sought the relief, while here the insurance companies stood by their obligations and intervenor-plaintiff is fighting to capture most of the proceeds.

■ It is the opinion of this Court that the position and contention of intervenor-plaintiff is wrong and that of plaintiff is correct. It makes no difference whether the negotiations for purchase and sale had any binding effect on intervenor-plaintiff, or whether the lease had been cancelled by intervenor-plaintiff following the fire. Plaintiff's interest in the proceeds of the insurance policies vested when the fire occurred. It suffered a much greater financial loss as a result of the fire than did intervenor-plaintiff.

It is the further opinion of this Court that Articles Five, Six and Seven of the lease option to purchase agreement are controlling in determining the amount intervenor-plaintiff is entitled to recover because of the loss suffered by it through the destruction by fire of the property leased by it to plaintiff.

As evidence that such was the understanding of the parties at the time of the execution of the lease option to purchase agreement, I quote from an inter-office memorandum dated March 18, 1952, from the Director, National Industrial Reserve Division, PBS, Washington, D. C., to Deputy National Director, PBS, Atlanta, Georgia, as follows:

"You will also note that the lessee's responsibility and accountability for the entire leased facilities shall be based upon the joint inventory and condition survey report of December 22, 1951. If any work has been done since this survey was made which materially changes the condition of any item, the report should be jointly amended accordingly."

Plaintiff was furnished with a copy of this inter-office memorandum and caused the original to be introduced as evidence in these cases.

■ The Court finds and holds that intervenor-plaintiff is entitled to recover out of the funds on deposit in this Court in these two cases the full fair market value of its property destroyed in the fire, free of the National Security Clause, and that plaintiff is entitled to the remainder of the funds on deposit in this Court.

Fair Value of Property Destroyed

Intervenor-plaintiff vigorously contends the insurable value of the property covered by the lease represents the fair market value of this property, and in fact made no other or further proffer of proof of fair market value. The Court ruled at the time this evidence was not proper, but intervenor-plaintiff, despite the ruling of the Court, rests its case upon this proof.

Plaintiff also proffered considerable proof as to fair market value, which the Court held equally improper. Plaintiff sought to prove that in the sale of all wartime property similar to the Wainwright Shipyard, the intervenor-plaintiff had never received a price in excess of 10 or 11% of the fair market value of such property based upon any reasonable appraisal. The Court ruled this evidence out of the case. In response to questions propounded to him, Frank

H. Weller, Deputy Director of the Appraisal Division of the General Services Administration, testified this was in fact generally true, but insofar as the Wainwright Shipyard was concerned, his Department was of the opinion that this property was worth considerably more because of its potentiality for use for such purposes as were then being made of the property.

 While the option and purchase agreement makes reference to the inventory and condition survey report of December 22, 1951, as containing the yard stick for determining plaintiff's liability and accountability for the property under lease, this Court is of the opinion that in these cases it should use the more recent inventory and appraisal made of the property by General Services Administration dated September 30, 1952. The property has to some extent changed since the report of December 22, 1951, and the use of the September 30, 1952, appraisal represents a valuation placed on the property solely and expressly for the purpose of sale. The valuation placed upon the real estate and personal property in this appraisal will, therefore, be used in determining the amount of money intervenor-plaintiff is entitled to receive out of the funds on deposit in this Court.

The December 22, 1951, appraisal of the personal property shows a fair market value of $70,833 and the September 30, 1952, appraisal shows personal property on hand of a value of $100,361. Only part of this property was destroyed in the fire and that part so destroyed is shown in the inventory and appraisal of September 30, 1952, to be of a value of $54,526.01. The Court holds that intervenor-plaintiff is entitled to be paid this amount out of the money on deposit in Civil Action No. 420. The remainder will be paid plaintiff, Seaboard Machinery Corporation.

 The September 30, 1952, inventory and valuation report of the real property under lease and destroyed by fire shows a fair market value as follows:

| | |
|---|---|
| Buildings 18 and 19— | |
| Union Melt Shop, etc. | $135,100.00 |
| Building 20—Mold Loft | 8,060.00 |
| Building 62—Mold Loft and | |
| Template Storage | 2,940.00 |
| Total | $146,100.00 |

To the above figure should be added $300 for blister damage to another building not otherwise injured by the fire. This makes a total fair market value of all the real estate under lease destroyed and injured by the fire as determined by intervenor-plaintiff's agent, General Services Administration, as $146,400. Intervenor-plaintiff will be paid this amount out of the funds on deposit in Civil Action No. 421, and the remainder will be paid to plaintiff.

A final order of distribution in conformity with this Memorandum-Decision will be made and entered herein.