**40**

SEABOARD MACHINERY CORPORA-
TION, Plaintiff,

v.

FIREMAN'S FUND INSURANCE COM-
PANY, Defendant,

United States of America, Intervenor-
Plaintiff.

Civ. A. No. 426.

United States District Court
N. D. Florida,
Tallahassee Division.

Oct. 28, 1957.

Leo L. Foster, Tallahassee, Fla., for plaintiff.

Harrold Carswell, U. S. Atty., Wilfred C. Varn, Asst. U. S. Atty., Tallahassee, Fla., for intervenor-plaintiff.

DE VANE, Chief Judge.

This is the third and last of the series of cases in which the United States is attempting to capture the proceeds of insurance carried by plaintiff on certain property owned by the United States and leased by it to plaintiff, which was destroyed in a fire at Wainwright Shipyard, Panama City, Florida, on December 22, 1952. The other cases involved buildings and personal property leased to plaintiff by General Services Administration. See Seaboard Machinery Corporation v. Hanover Fire Insurance Company, D.C., 149 F.Supp. 362.

This case is before the Court on a motion for summary judgment filed by each party. The facts are in no way in controversy insofar as they pertain to the specific limited question of plaintiff's liability to intervenor-plaintiff raised by the pleadings.

The property here involved was leased to plaintiff by the Maritime Commission

and consisted entirely of personal property.

The pertinent provisions of the lease agreement between plaintiff and the Maritime Commission bearing upon the issue involved in this case are set out below:

"9. The Hirer covenants and agrees to use the said machines in a careful and prudent manner during the term hereof, to keep and maintain the same in a good state of condition and repair, to replace and/or repair any and all damage thereto to the extent that upon the termination of this lease all of said machines shall be returned to the owner in as good condition as when the Hirer received the same saving only ordinary wear and tear, that is, deterioration resulting from normal use.

"10. The Hirer covenants and agrees to indemnify and save harmless the Owner from and against any and all claims, suits, actions, damages, penalties, judgments, trespasses, omissions, and any and all causes of action of whatsoever nature during the term hereof arising directly or indirectly out of or because of or on account of this lease, including personal injury, loss of life, loss of or damage to property, both real and personal, or any other matter, thing, or cause in connection with this lease.

"11. The Hirer covenants and agrees that it shall use said machine tools only at its plant at Panama City, Florida, and then only in performance of its several subcontracts for the fabrication of Hatch Covers and other marine equipment for vessels to be constructed for the United States Government.

"16. The Hirer covenants and agrees simultaneously with its execution and delivery of this lease to furnish to the Owner, at the Hirer's expense, a bond in the sum of $10,-000, approved as to form and substance by, and with surety or sureties satisfactory to the Maritime Administration of the Department of Commerce, the condition of said bond being that the Hirer shall, during the term of this lease, duly pay to the Owner the rent above specified upon the respective dates therein appointed for payment thereof and shall, during the term of this lease, duly observe and perform all and singular the covenants, agreements and conditions herein contained to be observed and performed by the Hirer. The original of such bond shall be delivered to the Division of Ports and Facilities, Maritime Administration, Department of Commerce, Washington 25, D. C."

No claim is made by intervenor-plaintiff against plaintiff charging a violation of any of the above enumerated provisions other than Paragraph 9. It is intervenor-plaintiff's contention in this case that Paragraph 9 of this lease agreement made plaintiff an insurer of the property under lease, and that intervenor-plaintiff is entitled to recover from plaintiff the full cost of replacement of all the property destroyed in the total sum of $181,200. In this connection it should be noted that in this case the Maritime Commission made no requirement of plaintiff that it insure said property for this or any other amount. Plaintiff was not required to carry any insurance on the property for the use and benefit of the Maritime Commission.

There is no question in the case that the property was completely destroyed by fire. There is no issue of negligence charged against plaintiff, and the only question presented for this Court's decision is whether Paragraph 9 quoted above makes plaintiff an insurer of the property involved and liable, as here claimed by intervenor-plaintiff, for the full replacement value of the property destroyed by the fire.

The pleadings in the case show, and the parties agree, that plaintiff had an insurable interest in the property in question, and that it insured its interest therein for the sum of $68,374.80 and

that the insurance company placed in escrow in full payment and satisfaction of plaintiff's claim the sum of $67,488.30. This escrow agreement was made necessary by the intervenor-plaintiff notifying the insurance company of its claim against plaintiff, and the money was deposited at the direction of this Court in escrow prior to the filing of the intervenor petition in this case and remains and still is held in escrow pending the outcome of this controversy.

Counsel for intervenor-plaintiff conceded on oral argument and on brief in this case that under the general rule the common-law obligation of a bailee is to use due care and is liable to the bailor for damage to or loss of the property only in case of its failure so to do. In this case, however, intervenor-plaintiff vigorously insists that the contract here in question imposed absolute liability for the safe return of the property in question, and upon failure to make such return, bailee became liable to the bailor for the full replacement cost, or at least the full market value of the property.

In making this contention, counsel for intervenor-plaintiff relies upon 6 Am. Jur., Sec. 239 and cases there cited. There are cases to be found in other jurisdictions supporting the position of intervenor-plaintiff herein, but in the opinion of this Court this case is controlled by the opinion of the Court of Appeals, Fifth Circuit, in Reconstruction Finance Corporation v. Peterson Brothers (Peterson Brothers v. Arthur G. McKee & Company) 160 F.2d 124, and by the decisions of the Supreme Court of Florida in the following cases: Williamson v. Phillipoff, 66 Fla. 549, 64 So. 269, 52 L.R.A.,N.S., 412; Coombs v. Rice, 64 Fla. 202, 59 So. 958. Many other cases from other jurisdictions could be cited, but as Judge Hutcheson said in Reconstruction Finance Corporation v. Peterson Brothers, supra (160 F.2d at page 126):

"A great deal has been written on the subject of the enlargement by special contract of the common law liability of a bailee, and there is a difference of opinion as to what form of words will suffice. It will serve no useful purpose to discuss the authorities here. It is sufficient to say that while some cases have held that the use of language such as that relied on by appellant will enlarge the common law liability of bailee, the great weight of authority is to the effect that such a clause merely sets expressly out what a common law bailment implies, and does not add anything to it."

In this connection, it is of interest to note the similarity in the bailment contract involved in Reconstruction Finance Corporation case and that involved here.

While making it no issue by the pleadings in the case, counsel for the intervenor-plaintiff in their final argument in this case suggested that where insurance is effected by the bailee, either voluntarily or pursuant to an agreement expressed or implied, that the bailee is answerable to the owner of the goods from the proceeds in case of loss, the benefit of which may be claimed by the bailor to the extent of his insurable interest. Neither the Court of Appeals of the Fifth Circuit or the Supreme Court of Florida have expanded the liability of a bailee to such extent and this Court is unwilling to do so here.

Under the decision of the Court of Appeals, Fifth Circuit, in Reconstruction Finance Corporation v. Peterson, supra, a conditional liability existed on the part of plaintiff to the intervenor-plaintiff, which plaintiff had the right to protect, and to now rob it of the benefits of its wise decision in the matter is not legally authorized here; moreover, as pointed out above, plaintiff had an insurable interest in the property beyond its conditional liability. Had intervenor-plaintiff desired insurance upon this property for its own protection, it could have by its lease agreement required plaintiff to carry such insurance to the maximum limit of insurable value under state law as the General Services Administration did in the other two cases

referred to above. Seaboard Machinery Corp. v. Hanover Fire Ins. Co., D.C., 149 F.Supp. 362.

In conformity with this memorandum-decision an order will be entered herein granting plaintiff's motion for summary judgment.